(117 So. 492)
## BOOTH v. STATE. (2 Div. 396.)

Court of Appeals of Alabama. June 19, 1928.

510

Charlie C. McCall, Atty. Gen., for the State.
Brief did not reach the Reporter.

SAMFORD, J. This defendant, his wife, eight of his own children, his brother, his nephew, his son's wife, and her two children were all in the home of defendant in an isolated part of the county at early breakfast time on a certain morning in February. So far as appears, they were peacefully enjoying themselves as a happy, though humble, family and the son's wife was playing on the organ "Home, Sweet Home." Just at this time three men approached the house from the rear, armed with shotguns and pistols, and, without stating their business, proceeded, against the warning of both the defendant and his wife, into the yard surrounding the house. The defendant, who was on the front porch, rushed into the house, got *his* gun, and all began shooting. Which of the four fired the first shot is not clear and remains in much doubt, but McCulley, one of the advancing party, testifying for the state, says:

"He (defendant) said, 'Stop right there; don't come another step.' And I stopped. I did not begin to speak. He said, 'I'll get my damn gun and kill every damn one of you.' He wheeled around and Bam Booth grabbed him by the arm, and said, 'Don't do that, Bam.' Al Gilbert (the injured man) walked up a little in front of me. He (Gilbert) threw up his gun as he did, and said, 'Stop!' Bam's wife jumped in between him and us, and threw her arms up, and sorter hollered. He ran in the house; there was a shot fired."

None of the state's witnesses could or would tell just exactly who fired the first shot, but all of the witnesses for the defendant testified that the advancing assailants fired one or more shots before the defendant fired. Everything that transpired there at the house; everything said and done; the conversation between the parties; the screaming and running of the women and children; the

Jerome T. Fuller, of Centerville, for appellant.

number of shots fired; and the kind of guns used constituted the res gestæ, and every fact relating to or shedding light on the transaction was admissible in evidence so that the jury might have a perfect picture of the defendant's home just before and immediately after it had been riddled with bullets and buckshots from the three men who did the shooting, and the court should have confined the evidence to the res gestæ.

■ The court did not do this, but permitted the state, over the objections and exceptions of defendant, to pursue an inquiry involving the search of the territory near defendant's house and the finding of a "condenser to a still" in a "pine top" some 200 or 300 yards away from defendant's house. The examination proceeded along this line with all three of the state's witnesses as if defendant was being prosecuted for possessing a still, thereby directing the minds of the jury from the main issue, and tending, at least, to raise the suspicion that defendant was violating the law prohibiting the possession of a still. All of this testimony was illegal and irrelevant and tended to, and doubtless did, prejudice the minds of the jury against this defendant.

■ After an extended examination of the three state's witnesses regarding the finding of the "condenser," as described in the foregoing paragraph, and after the defendant's witnesses had all testified, the court seems to have realized its error and before beginning his general charge to the jury, in a short general statement and without further motion from defendant, sought to withdraw all of the illegally admitted testimony from the jury. This is a practice sometimes resorted to by trial judges, but it is doubtful if the poison is ever extracted or the error so cured as not to seriously injure the defendant before the jury. In any event such a course is never approved and as was said by Sayre, J., in Maryland Cas. Co. v. McCallum, 200 Ala. 154, 75 So. 902: "This court has always regarded the practice with cautious disapproval." Davis v. State, 18 Ala. App. 482, 93 So. 269; Watson v. Adams, 187 Ala. 490, 65 So. 528, Ann. Cas. 1916E, 565. For the numerous errors committed in regard to this character of testimony the court should have granted the defendant's motion for a new trial.

Over proper objection, motion, and exceptions, the court permitted the state to introduce in evidence the following affidavit and warrant:

"Affidavit and Writ for Search Warrant.
"The State of Alabama, Bibb County.
"Before me, John Hyde, a J. P., personally appeared M. O. Dailey, who being duly sworn, deposes and says that Bam Boothe has in House as in his possessing Ill Leagal licker.
"M. O. Dailey.
"Sworn to and subscribed before me this the 26th day of Feb., 1927.
"John Hyde, J. P."

"Search Warrant.
"The State of Alabama, Bibb County.
"To the Sheriff or Any Constable of Said County:
"Proof by affidavit having this day been made before me, by M. O. Dailey that Bam Boothe Has in House as in His passing Ill Leagle Licker you are therefore commanded, in the day time as at night, to make immediate search on the person of Bam Boothe for the following property Ill Leagal Licker, and if you find the same or any part thereof to bring it forthwith before me, at my office at McCulley Town.
"Dated the 26th day of Feb., 1927.
"John Hyde, J. P.
"Executed by finding part of still consisting of 1 coper condenser and several empty jugs and cans."

■■ According to the testimony, this paper was turned over to M. O. Dailey, a deputy sheriff for Bibb county, who says he had it in his pocket at the time of the advance on defendant's home, but no witness testifies, and there is no evidence, that Al Gilbert was ever deputized to aid in executing the warrant, and there was no evidence tending to show that the defendant was advised of the existence of such a warrant, or that Dailey, McCulley, and Gilbert were officers in the discharge of duty; on the contrary, the evidence is positive to the effect that defendant did not know and was not so told. These three men, under the evidence in this case, advanced into the close of defendant's home vi et armis, and, if not protected by the warrant above set out, were each trespassers in a very serious degree. Waiving and not deciding the question as to whether the search warrant was valid and had been issued in a case allowed by law, the evidence is that the defendant was not apprised of the fact that either member of the party had such a warrant, or that they had come to execute it, or that one had been issued. Where the officer does not exhibit the warrant or make any mention that he had one in possession, or that he was acting under its authority, and there is no evidence that the defendant had knowledge of the existence of a search warrant, the defendant was within his rights when he resisted the entrance of his home by Dailey, McCulley, and Gilbert. 24 R. C. L. 710 (13). It may be that one of the assailing parties had a search warrant in his pocket, but he did not attempt to use it or to make a search of defendant's home under its authority. The affidavit and search warrant was therefore inadmissible.

■ Moreover, section 5477 of the Code of 1923 provides:

"The warrant may be executed by any one of the officers to whom it is directed, *but by no other person*, except in aid of such officer, *at his request* [italics ours], he being present," etc.

In this case there is an entire absence of any evidence showing that Dailey, the dep-

512

uty, ever requested Gilbert to aid him in the execution. of the search warrant, if he really had any. In the absence of evidence that Gilbert was acting under and by virtue of the search warrant, such warrant was not admissible in evidence.

█ There was no evidence that the grand jury knew the defendant's name to be none other than the one named in the indictment. Moreover the allegation, "Whose Christian name is unknown," is surplusage, and may be ignored. Taylor v. State, 100 Ala. 68, 14 So. 875.

██ Refused charge 6 is a verbatim copy of the statement of the law by Brickell, C. J., in Crawford v. State, 112 Ala. 1–31, 21 So. 214, citing as authority 1 Addison on Torts (Wood's Ed.) 398. This to us is good authority. A trespass upon the home, an invasion of its quiet enjoyment, is more than a mere trespass upon property. In this state it is the right of the citizen to protect his home as he would his life. It is his castle and his refuge. Refused charge 6 should have been given. No less a judge than Stone, C. J., said:

"A man's house is regarded in law as his castle—his place of refuge. So solicitous is the law in preserving the sanctity and inviolability of one's house that it has placed about it every safeguard to prevent unwarranted intrusion and the commission of unlawful deeds." Christian v. State, 96 Ala. 89–91, 11 So. 338.

Defendant's refused charge 8 was almost an exact copy of the above. Of course, the fact that defendant was in his home would not prevent the service of a lawful search warrant, being executed in a lawful manner, but under the evidence in this case the charge should have been given.

█ Refused charge 9 was covered by the court in its general charge. Refused charge 10½ pretermits a consideration of all the evidence. Refused charge 20 is confusing and misleading. Refused charge 21 was covered by the general charge, as was also refused charge 22.

█ Under the evidence in this case, as it here appears, neither McCulley nor Gilbert was requested by Dailey to aid him in the execution of the search warrant which he claims to have had in his possession. Therefore refused charges 23 and 30 should have been given, but refused charges 24, 25, and 31 embrace Dailey to whom the warrant was delivered, and these charges were properly refused. Having the search warrant in his possession, Dailey had a right to serve it, provided he did it in a lawful manner and using no unnecessary force. He also had the right to request McCulley and Gilbert to assist him and, if he had done this, they would have had the same protection under the warrant as had Dailey.

It was the duty of Dailey, when he found defendant in his home, if he intended to proceed to a search of defendant's home, to have informed defendant that he had a warrant to search him and his home and to have demanded him to yield. There was no such evidence in this case, nor was there any evidence that defendant knew that Dailey had such a warrant. Refused charge 29 should have been given.

It may be that on another trial the state will be able to show a request by Dailey to Gilbert that he aid him in the execution of the search warrant on defendant's house. Certain it is that this record contains no such evidence and for that reason refused charge 45 should have been given.

For the errors pointed put, the judgment is reversed, and the cause is remanded.

Reversed and remanded.

Charlie C. McCall, Atty. Gen., for the State.

Brief did not reach the Reporter.