166 So. 60

## HILL v. STATE.
### 6 Div. 884.

Court of Appeals of Alabama.
Jan. 14, 1936.

Rehearing Denied Feb. 4, 1936.

J. A. Lusk & Son, of Guntersville, for appellant.

A. A. Carmichael, Atty. Gen., and Jas. L. Screws and Wm. H. Loeb, Asst. Attys. Gen., for the State.

BRICKEN, Presiding Judge.

Upon the trial of this case in the court below, appellant was convicted of the offense of murder in the second degree, and appeals.

In briefs of counsel for the respective parties, it is agreed that "the statement of facts," contained in appellant's brief, are substantially correct. These facts, as developed upon the trial of this case, in the court below, are as follows:

Defendant, appellant, was tried on an indictment for murder in the first degree, for the killing of James Morgan Brooks, alias Buck Brooks, by shooting him with a gun.

Defendant, crippled in his lower limbs, in 1934 had rented a house from deceased, for the labor of his sixteen year old son Hubert; deceased was also to pay defendant $10 per month and furnish free pasture. In September, 1934, deceased, needing the house for another tenant, moved defendant into a smaller house (where the tragedy later occurred); defendant making the change without remonstrance, the son having quit working for deceased July 1st. After removal to the "little house," deceased notified defendant verbally he wanted him to give up the house and find another place; both deceased and defendant, it seems, made unavailing efforts to find defendant another place. Deceased purposed to use the lumber on the little house in building or repairing a barn.

On the morning of the day of the tragedy, defendant went over to Fayette Smith's farm to help build a pasture-fence, leaving the four smaller children, of ages ranging from six to twelve, at home. Later that morning two of deceased's hired men, Haney Parker and Willie Lyle, came to where defendant was working and told him they had been sent to tear the house down. He advised them not to do so, and for them to tell deceased to let it alone until he (defendant) could get a place. Following this defendant went back home, got his son's shotgun and returned to his work on Smith's fence. While defendant was eating dinner at the Smith home,

his little daughter, Voncile, came and told him "they" were tearing the top off the house. Defendant, accompanied by the child, and carrying the shotgun, went back to the home, surveyed the partial demolition, pleaded his straitened circumstances to deceased, and that not availing, turned, as if to go away. What happened immediately after is in dispute; the witnesses Parker and Lyle testifying that defendant aimed his gun at deceased while deceased was stooping over to pick up a plank and defendant and his little daughter testifying that defendant did not fire until deceased was in the act of reaching for or pulling out his pistol; defendant testifying that this occurred immediately after a profane outburst from deceased; the daughter without repeating the profanity, merely testifying that she couldn't "tell it like it was." But it is not disputed that defendant fired first, and that the five or six shots from deceased's pistol followed immediately, in rapid succession. The shot from defendant's gun took effect in deceased's left side, breast, and face, causing his death in about two hours. Defendant went from the scene to the home of a brother on Sand Mountain, from there to his mother's home in Marshall county, and after staying there four days, went to the sheriff's office at Guntersville and surrendered.

■ Involved in the charge contained in the indictment, which, as stated, was murder in the first degree, were the other and lesser degrees of homicide, murder in the second degree, and manslaughter in the first degree. As to the latter offense, malice is not an essential ingredient.

The duty devolved upon the jury; it was their sole province to ascertain, determine, and to declare, by their verdict, upon conviction of the accused, the degree of homicide of which they found him guilty, and in so ascertaining and determining, the jury was confined to the evidence adduced upon the trial, and to the instruction as to the law given them by the court.

■ Appellant insists that under no phase of the testimony in this case was the jury justified in determining and declaring by its verdict that the killing of deceased was done with malice, and that therefore the verdict to the contrary is erroneous and should not be permitted to stand. It is further contended that the following occurrence as shown by the record was erroneous and that this contributed to the character of verdict rendered, or might

have done so. Grimes v. State, 23 Ala. App. 511, 513, 128 So. 120, 10th headnote. The occurrence complained of was as follows: "Court convened the next morning at 8:30 and the argument was opened by the Solicitor, Mr. Hutson for the State. In his argument he made the statement, argued to the jury that because this defendant when he took the stand did not testify that he struck because of hot blood and sudden passion and did not say that he shot in self-defense, he was therefore not entitled to the defense of manslaughter by hot blood and sudden passion because he did not say that he struck in self-defense that therefore he was not entitled to rely upon the doctrine of self-defense, because he did not swear that he shot in self-defense. Counsel for the defendant objected to this argument and called upon the Court to say that that was not a proper argument, that it was not the province of the defendant as a witness to state that he struck of hot blood or sudden passion and it was not his province as a witness to say that he shot in self-defense and that it was not a proper argument to make to the jury, that because the witness did not make statements that he was not authorized as a witness to state, that he did not make statements that were invasive of the province of the jury that therefore he should be denied the right to insist that he was entitled to the consideration of the jury, that his act was caused by hot blood or sudden passion and he was not denied the right to have the jury pass upon the question as to whether or not he acted in self-defense, under the instruction of the Court. The Court replied to this, 'I will give you an exception, Colonel' and declined to instruct the jury that this was an improper argument, declined to exclude the argument from the jury. To this ruling of the Court the defendant excepted."

The foregoing ruling of the court was error to a reversal. The insistences as shown by the record to have been made in this connection were correct and the exception reserved well taken.

There was also error in the court's refusal to exclude the objectionable and erroneous argument made by counsel for the state in closing. The motion of appellant's counsel in this connection was well taken. This prejudicial argument should have been excluded, and the jury instructed as requested. The cursory remarks of the court were insufficient, and the defendant's case should not have been thus burdened.

■ Under the agreed facts in this case, supra, the defendant was in lawful possession of the house in question where he lived with his family. This being true, he had the right to defend his person and property against unlawful violence, and in so doing he could employ as much force as was necessary to prevent its invasion. The law, however, gave him no right to use more force than was necessary for this purpose. Brooks, the deceased, if he desired to regain possession of the house, which belonged to him, had his adequate remedy at law, to which he should have resorted. He had no legal right to eject the defendant vie et armis, and as a result he committed a trespass in tearing down and demolishing defendant's home under the facts here agreed upon and shown by the evidence in this case. In the case of Levens v. State, 3 Ala.App. 45, 57 So. 497, 499, this court said: "When such a trespass is threatened or committed, the party sought to be arrested has no right to kill, unless the unlawful act, when properly and lawfully resisted by him, is persisted in by the trespasser until it ultimately results either in an actual necessity on the part of the party sought to be arrested to kill in order to prevent to himself great bodily harm, or the appearances are such as to engender the reasonable belief of the existence of such necessity."

In Carroll's Case (Carroll v. State), 23 Ala. 28, 36, 58 Am.Dec. 282, the Supreme Court, in this connection, said: "The rule as to the extent of protection to the dwelling being ascertained, there is but little difficulty in its application to the facts as stated upon the record. It is conceded most fully, that, if the evidence shows an assault upon the house, or the person, under circumstances which would create a reasonable apprehension—that is, a just apprehension in the mind of a reasonable man—of the design to commit a felony with force, or to inflict a personal injury which might result in loss of life or great bodily harm, the danger of the design being carried into execution being imminent and present, the person in whose mind such an apprehension is induced, and over whose person or property such danger is impending, may lawfully act upon appearances and kill the assailant. The law, in such a case, would not require that the danger should be real—that the peril should actually exist; but it does require that the appearances should be such as would excite a reasonable apprehension of such peril." Also,

in the Carroll Case, supra, the defendant requested the following charge: "The prisoner's counsel requested the court to charge the jury, 'that, if they believed from the evidence that the defendant had notified the deceased not to enter his dwelling house, and that the deceased was a stout, healthy man, and the defendant a weak and infirm man, and that the deceased had previously threatened that, if the defendant interfered with him, in any manner, form or shape, he would kill him, or beat him into mincemeat, and that the defendant knew of such threats, and that the deceased was a violent man, and that after the deceased was notified not to enter the dwelling house of the defendant he did enter it, and that after he had entered the defendant's dwelling house, and whilst he was in the house, the defendant killed him, under a well grounded and honest belief, created by all the circumstances, that it was necessary for him to kill the deceased, to protect his possession of his dwelling house, then the prisoner could not be convicted of murder in either degree." As to the foregoing charge, the court said: "Assuming, therefore, that the deceased came to his death by the act of the prisoner, and by the use of a deadly weapon, and in the aspect of the case as presented by the charge requested, the question is simply whether the act was done under the necessity, real or apparent, which the law requires. If it was not, it follows necessarily that the prisoner was guilty either of murder or manslaughter; and if there was any evidence which tended to show that such necessity existed, the charge requested should have been given."

In the case of Booth v. State, 22 Ala. App. 508, 512, 117 So. 492, 495, this court said: "A trespass upon the home, an invasion of its quiet enjoyment, is more than a mere trespass upon property. In this State it is the right of the citizen to protect his home as he would his life. It is his castle and his refuge. * * * No less a judge than Stone, C. J., said: 'A man's house is regarded in law as his castle—his place of refuge. So solicitous is the law in preserving the sanctity and inviolability of one's house that it has placed about it every safeguard to prevent unwarranted intrusion and the commission of unlawful deeds.' Christian v. State, 96 Ala. 89–91, 11 So. 338."

█ Appellant does not contend that he had the legal right to kill deceased because of the fact deceased was proceeding to tear down the house under the conditions stated, but he does insist that the evidence without dispute disclosed that the deceased at the time of the commission of the wrongful act was armed with a concealed pistol. And he further insists that the first overt act which led to the fatal shooting was committed by deceased in attempting to draw said pistol from his pocket after having used opprobrious and threatening words to defendant. These and other questions of fact were for the sole determination of the jury.

█ The court unduly abridged the right of defendant in his attempt to show facts and circumstances relating to the locus in quo and the res gestæ. The accused had the right to show any fact and circumstance, in this connection, coming to his knowledge that were of such character as were reasonably calculated to engender sudden passion and resentment, and the homicide traceable solely to the passion thus aroused, so as to reduce the killing from murder to manslaughter defendant was entitled to show that there was trash and dirt from the demolished roof in the food his young children were preparing for dinner at the time he went into the house just a few minutes prior to the shooting. 30 Corpus Juris, p. 224; Levens v. State, 3 Ala.App. 45, 57 So. 497; Metcalf v. State, 17 Ala.App. 14, 81 So. 350.

There are other erroneous rulings upon the admission of evidence, but as this case is to be reversed, a discussion of each of these questions need not be had as in all probability they will not arise upon another trial.

█ The motion in arrest of judgment based upon the insufficiency of the verdict was properly overruled by the court. The verdict of the jury was in conformity with the instructions of the court and was as follows: "We, the jury, find the defendant guilty of murder in the second degree, and fix his punishment at ten years imprisonment in the State Penitentiary." This verdict meets every requirement, it was properly received and the adjudication of guilt based thereon is regular, as well as the judgment of conviction pronounced and entered. The insistence of appellant that the verdict is defective and insufficient because it does not state, "as charged in the indictment," and also failed to state the name of the person killed, is doubtless based upon the ill-advised case of Huguley

60

v. State (Ala.App.) 158 So. 903.[1] The Huguley Case, supra, has been modified and overruled on this question in our case of Effie Russell v. State, 165 So. 256. See, also, Gulledge v. State (Ala.App.) 160 So. 556,[2] certiorari denied 230 Ala. 206, 160 So. 556; Jones v. State, 79 Ala. 23, 25; Blount's Case (Blount v. State), 49 Ala. 381; McDonald v. State, 118 Ala. 672, 23 So. 637.

■ In this opinion we do not consider the action of the court in refusing to defendant the large number of charges requested in writing. The court's oral charge, coupled with charges "given" at request of appellant, covers about sixteen pages of this record, and properly states every phase of the law involved under the issues in this case. The refused charges, where correct, are thus fairly and substantially covered.

The motion for a new trial should have been granted. For the errors indicated, the judgment of conviction from which this appeal was taken is reversed, and the cause remanded.

Reversed and remanded.

---

[1] 26 Ala.App. 295.　　　　[2] 26 Ala.App. 332.