**BARNETT v. STATE.** (6 Div. 34.)

(Court of Appeals of Alabama.   Feb. 1, 1927.)

**1. Criminal law ☞1064(1) — Where motion for new trial included all questions presented on main trial, refusal of new trial presented every material question on appeal (Code 1923, § 6088).**

Where motion for new trial incorporated every question presented on main trial, as well as other pertinent questions, ruling of court, denying new trial, presented every material question on appeal, in view of Code 1923, § 6088.

**2. Homicide ☞234(1)—Where deceased, during quarrel, reached for revolver, which was discharged during struggle, defendant, not shown to have fired fatal shot, held not guilty of second degree murder.**

Defendant, who suggested to deceased fistic encounter, *held* not guilty of murder in second degree, where deceased removed revolver from desk, which went off, wounding both parties during ensuing struggle, in absence of showing that fatal shot was fired by defendant.

**3. Homicide ☞9—To be guilty of "second degree murder," defendant must have fired fatal shot willfully, intentionally, and maliciously.**

To prove murder in second degree, state must show that defendant fired fatal shot, and that he did so willfully, intentionally, and maliciously.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Murder in Second Degree.]

**4. Criminal law ☞308—Presumption of innocence continues until jury is convinced by sufficient evidence of guilt beyond reasonable doubt.**

Presumption of innocence attends defendant throughout trial, or until sufficient evidence has been introduced to satisfy jury beyond reasonable doubt of defendant's guilt.

**5. Criminal law ☞741(1)—Right of jury to pass on weight and sufficiency of evidence is exclusive.**

Finding of jury will not be revised, where made on basis of proof, as jury has exclusive right to pass on weight and sufficiency of evidence.

**6. Criminal law ☞737(1)—Whether any evidence of guilt exists is for court.**

Whether there is any evidence of guilt in particular case is question for court, and not for jury.

**7. Criminal law ☞1168(1)—Submitting case to jury in absence of proof of guilt constitutes reversible error.**

Submitting criminal case to jury when there is *no proof of guilt constitutes reversible error.*

**8. Homicide ☞234(1) — State's burden of proof, in murder prosecution, is not sustained, where conjectural as to who fired fatal shot.**

State cannot meet burden of proof of defendant's guilt, in murder prosecution, where existence of necessary element of crime as to who fired fatal shot rests in conjecture only.

**9. Criminal law ☞364(1)—Where deceased was shot in scuffle in which defendant sought to obtain deceased's revolver, rejecting defendant's testimony, part of res gestæ, as to whether he felt first shot, held error.**

In prosecution for murder, where deceased was shot in scuffle in which defendant attempted to get possession of his revolver, during which several shots were fired, excluding testimony of defendant as to whether or not he felt anything when first shot was fired *held* error; such inquiry being part of res gestæ and material as relating to intent of combatants.

Appeal from Circuit Court, Jefferson County; John P. McCoy, Judge.

Rufus J. Barnett was convicted of murder in the second degree, and he appeals. Reversed and remanded.

Prosch & Prosch, Hugh A. Locke, David J. Davis, Earl McBee, and F. D. McArthur, all of Birmingham, for appellant.

In order for a killing to constitute murder or first degree manslaughter, there must be an intent to kill or inflict the injury causing death. Johnson v. State, 94 Ala. 35, 10 So. 667; Goodman v. State, 15 Ala. App. 161, 72 So. 687; Bob v. State, 29 Ala. 20; Mitchell v. State, 60 Ala. 26; 29 C. J. 1149; Code 1923, §§ 4454, 4460. The evidence shows an unintentional, involuntary homicide, and the motion for new trial should have been granted.

Harwell G. Davis, Atty. Gen., for the State.

Brief of counsel did not reach the Reporter.

───────────

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

BRICKEN, P. J. [1] The motion for a new trial in this case is properly presented. It is also full and complete and incorporates every question originally presented on the main trial, as well as other pertinent questions. In this decision, therefore, we deem it unnecessary to discuss separately and severally the numerous points of decision involved on the main trial. We are of the opinion that the ruling of the court in denying to the defendant (appellant) a new trial presents every material question upon this appeal, for the statute provides whenever a motion for a new trial is refused in a criminal case, the appellate court may grant new trials, or correct any error of the circuit court in refusing the same. And no presumption in favor of the correctness of the judgment of the court appealed from shall be indulged by the appellate court. Code 1923, § 6088.

[2] In this case the indictment charged murder in the first degree. A charge of this nature includes each of the four degrees of homicide known to the law in this state—that is to say, the indictment charged murder in the first and second degree; also manslaughter in the first and second degree. In order to constitute murder in the first or second degree or manslaughter in the first degree (except in instances not pertinent here), the killing complained of must be shown, under the required rules of evidence, to have been intentionally committed, and this, we take it. is the principal contention in this case; the insistence being that the undisputed evidence refutes the contention that the death of the deceased was the result of any intentional act upon the part of the accused. A careful attentive consideration of all the evidence in this case discloses there was but slight, if any, conflict as to the attending facts of the killing. It appears therefrom that a party of friends, after office hours, had met in the office of the deceased and were engaged in a friendly pastime, and that a dispute arose over a trivial matter. Angry words were passed between the deceased and defendant, whereupon the latter invited the deceased to "take off his glasses," at the same time "doubling up his fists." The deceased promptly removed his glasses and laid them upon a shelf and immediately returned toward the defendant, but, instead of entering upon a fistic combat, he, the deceased, approached his desk and removed therefrom his revolver, whereupon the defendant "grabbed it" while in the hands of deceased, and a scuffle over the pistol ensued, resulting in both parties falling upon the floor, and also in both parties being wounded by the repeated firing of the pistol during the struggle. The wounds upon Dr. McDaniel proved fatal, and the wounds upon Dr. Barnett (defendant) resulted in his being confined in a hospital for some time. None of the witnesses were able to testify which of the two combatants fired the pistol, and from the evidence it is conclusive that no one knew or could tell who did fire the pistol. It is apparent that the only reasonable deduction could be that the pistol was discharged repeatedly in the efforts of the two men struggling for its possession.

[3-8] The defendant was convicted of murder in the second degree, and the paramount question is: Was there any evidence that showed or tended to show that the defendant (1) fired the fatal shot; (2) and, if so, did he do so willfully, intentionally, and maliciously?—these being the constituent elements of the offense for which he was convicted. In this case, as in all criminal cases, the accused was presumed to be innocent, and this presumption attended him throughout the trial, as a matter of evidence, or until overcome by evidence sufficient to satisfy the jury beyond a reasonable doubt and to a moral certainty that he did willfully and with malice aforethought fire the shot that took the life of deceased. Of course, if there was proof showing or tending to show that he so fired the fatal shot, and the jury had passed upon it, we could not ordinarily revise their finding; for it is the exclusive right of the jury to pass upon the weight and sufficiency of the evidence. But whether there is any evidence of guilt is not a question for the jury, but is for the court; and no trial court can submit a criminal case to a jury when there is no proof of guilt, without committing reversible error. In this case no witness testified that the defendant fired the pistol at all. The question as to who did rested in conjecture only, and this, we think, is insufficient to meet the burden of proof resting upon the state to show affirmatively that the defendant committed the act complained of.

It would seem, from a reasonable consideration of all the facts as shown by the undisputed evidence, that this defendant expected and was ready for a fistic encounter only with the deceased. There is no contention, or semblance of evidence, tending to show that he was armed in any manner; and the undisputed fact that he invited Dr. McDaniel to take off his glasses, at the same time defendant doubled up his fists, is reasonably convincing that he contemplated only a fistic encounter and that no thought of killing the deceased was entertained by him. It was but natural that he should grab the pistol of deceased when he (deceased) took it from the drawer of his desk; this in order to prevent the deceased from shooting him, for, while the divine law says, "Thou shalt love thy neighbor as thyself," neither the divine law or the law of man requires one to love his neighbor better than himself. This coupled with the natural instinct, that of self-preservation, the first law of nature, gives, we think, the most reasonable explanation of the conduct of the accused upon the

occasion in question. And from the view we take of the undisputed evidence in this case, the evidence falls far short of the required measure of proof to constitute the killing, here complained of, as murder. The general affirmative charge on this question was asked and refused, and we think erroneously. Our opinion is said charge should have been given for the reasons hereinabove stated.

[9] There was also error in the ruling of the court in not permitting the defendant to testify whether or not he felt anything when the first shot was fired. This inquiry was not only of the res gestæ, but was specially important in explaining the relative intent of the deceased and of the defendant.

There were numerous other rulings of the court which counsel for appellant insists were erroneous, but upon another trial these questions in all probability will not arise.

The motion for a new trial should have been granted, and in its refusal the court committed error to a reversal.

Reversed and remanded.