(125 So. 688)

### PELHAM v. STATE.  (1 Div. 881.)

Court of Appeals of Alabama.   Jan. 14, 1930.

See, also, 22 Ala. App. 529, 117 So. 497.

C. L. Hybart, of Monroeville, for appellant.

Charlie C. McCall, Atty. Gen., for the State.

BRICKEN, P. J. From a judgment of conviction for manslaughter in the first degree this appeal was taken.

This court has given attentive and careful consideration to the matters contained in this record. We find no evidence showing or tending to show that this appellant contributed in any manner to the bringing on of the difficulty with Oliver which resulted in the death of Oliver, the deceased named in the indictment. To the contrary, we think it clearly appears that Oliver and one Johnson, and possibly others, were the aggressors throughout, and that the fatal difficulty resulted solely from the activities of these parties. That Oliver met his death as a result of knife wounds inflicted upon him by appellant is without dispute, but under the law this fact is by no means conclusive of the guilt of the accused, for every killing of a human being by another is not necessarily unlawful. The law recognizes the right of a person to take the life of another in order to save his own life, provided none of its provisions have been transgressed, and that the act is done in self-defense. Barnett v. State, 21 Ala. App. 646, 111 So. 318, 319.

In the Barnett Case this court said: "While the divine law says, 'Thou shalt love thy neighbor as thyself' [it also says, 'Thou shalt not kill'], neither the divine law nor the law of man requires one to love his neighbor better than himself. This, coupled with the natural instinct, that of self-preservation, the first law of nature," etc. In Pilcher v. State, 16 Ala. App. 237, 77 So. 75, 76, this court said: "The word 'kill' does not necessarily mean any more than to deprive of life. A man may kill another by accident, or in self-defense, and in many other ways, without the imputation of crime." In order to bring the acts of the accused, in the instant case, within the inhibition of the law, the state was under the burden of proving beyond a reasonable doubt, and to a moral certainty, that the killing complained of was unlawful and intentional. As stated by the trial court in the oral charge, "manslaughter in the first degree is the unlawful, voluntary, or willful killing of a human being, but without malice." A recital of the evidence here would serve no good purpose. Under the evidence, the affirmative charge was not in point, and was therefore properly refused.

The statement attributed to the defendant, by the testimony of state witness Jasperson, to wit, "I'll cut the son of a bitch," if made, was not of the res gestæ. Cox v. State, 19 Ala. App. 205, 208, 96 So. 83, and cases cited. Nor was such statement in any sense a confession, for, if made, it related to the future, and not to past transactions. Cox v. State, supra. The court erred in overruling defendant's timely objection to the questions, and in permitting the witness to thus testify.

The matter was prejudicial to the substantial rights of the accused, and it appears from the record that later in the trial the court took this view of the matter, and of its own accord and without further motion reversed the ruling formerly made and excluded the testimony from the jury. In this connection appellant, we think, properly insists that the latter ruling of the court failed to repair the damage that had already been done, and that the hurtful effect of the testimony, which had remained with the jury for some time before it was excluded, was not eradicated. In this connection appellant insists: "This was in no wise a part of the res gestæ, nor in the nature of a confession, but was highly prejudicial to the appellant. This testimony was permitted to linger before the jury and soak in their minds there quite awhile. * * * If this evidence was incompetent, as we contend it is, and as the court also finally held, the permitting of the testimony to linger in the minds of the jury for the time the court permitted, is bound to have had its effect in prejudicing the minds of the jury against the appellant," etc.

In Childs v. State, 55 Ala. 30, in disapproval of the practice of first admitting and afterwards excluding illegal and incompetent evidence, the court said: "It may be difficult, sometimes, for jurors to prevent evidence that has been improperly before them from having some influence in shaping the verdict they must render." "The illegal admission is apparently susceptible of subtle and sinister effect upon the discharge by the jury of the grave and supremely important duty committed to the jury." Watson v. Adams, 187 Ala. 490, 499, 65 So. 528, 530 (Ann. Cas. 1916E, 565).

In Jordan v. State, 79 Ala. 12, it was also pertinently said of the subsequent exclusion of improperly received matter: "But, in such case, the court should endeavor, as far as *practicable*, to remove *any* unfavorable and erroneous impression which such evidence may have made, and should clearly and *explicitly* instruct the jury to disregard it altogether."

In Carlisle v. Hunley, 15 Ala. 625, this observation was made by the court: "Every one, familiar with the practice, knows how difficult it is to eradicate from the mind of a jury an injurious impression thus created * * * by permitting illegal proof to be submitted to them."

In Jackson v. State, 94 Ala. 89, 10 So. 509, 511, the court said (Stone, C. J.): "It is certainly much the safer and better practice to exclude illegal testimony when first objected to. This because of the difficulty of eradicating from the minds of the jury the impression such testimony is liable to make."

In Green v. State, 96 Ala. 32, 11 So. 478, 479, in this connection it was said: "*This court regards with caution* the practice of ad-

mitting illegal evidence, and afterwards excluding it. It has frequently declared that the practice cannot be encouraged."

Davis v. State, 18 Ala. App. 482, 93 So. 269, 270: "The testimony was of a highly prejudicial nature, and, being illegal, the harm done could not be eradicated by a mere formal statement. * * * When * * * illegal testimony has been admitted, it is always a serious question as to how far such testimony, though withdrawn in the most explicit * * * manner, has injuriously affected the party against whom it was admitted." And it quotes from Maryland Casualty Co. v. McCallum, 200 Ala. 154, 75 So. 902: "This court has always regarded the practice with cautious disapproval."

In Booth v. State, 22 Ala. App. 508, 117 So. 492, 494, this court (through Samford, J.) said: "This is a practice sometimes resorted to by trial judges, but it is doubtful if the poison is ever extracted or the error so cured as not to seriously injure the defendant before the jury."

Much perplexity has been experienced by the courts in laying down satisfactory rules, where illegal evidence calculated to prejudice the defendant has been admitted and subsequently excluded. We think, however, and the general rule seems to be, that direct reversible error in this connection will not prevail, where the trial court has taken proper means to correct the error by direct, specific, and unequivocal instructions to the jury to disregard the illegal proof. But we do think, and so hold, that matters of this nature should be seriously and carefully considered upon motion for a new trial, to the end that no conviction should be allowed to stand, unless it clearly appears that the accused has, in all things, received the fair and impartial trial contemplated by law and to which in every instance he is entitled.

It is clearly deducible, from the undisputed evidence in this record, that state witness Johnson had some words with defendant in the late afternoon of the night of the killing, and that Johnson, with Oliver, the deceased, and possibly others, went to the commissary where the difficulty occurred in search of the defendant. And it was the insistence of defendant that the parties mentioned were after defendant for the purpose of raising the difficulty. In this connection the defendant on cross-examination asked the star witness, Johnson, who had testified he went there with Oliver to see defendant, after he (witness) had told Oliver of the occurrence with defendant in the afternoon, and Oliver told witness to go in the store (where defendant was) and tell him that he wanted to see him: "Q. Who did you leave Mr. Oliver with when you went in the store?" The court sustained objection to the question. This was error. The transaction and circumstances leading up to the difficulty were material matters, and under the defendant's insistences and contentions this evidence was clearly admissible and defendant should have been allowed to put this matter before the jury for their consideration in connection with all the other facts and circumstances in the case. By this ruling the right of full cross-examination of the witness was unduly abridged.

Witness McCants testified he got to the place of the difficulty that night just as the trouble came up, that the defendant came out of the store when he first saw him, and that he and defendant had a conversation there at that time, and Oliver and Johnson came up there at that time. The court would not let witness relate the conversation, although the other parties were present and it was an instant only before the difficulty was started by Oliver with defendant. The alleged conversation related to the difficulty and was of the res gestæ, and, this being true, what was said and done there at the time relating to the difficulty was admissible and should have been admitted.

Upon a consideration of the whole case, as shown by this record, we are of the opinion that defendant's motion for a new trial should have been granted, and it was error to refuse same.

Reversed and remanded.