## McDANIEL v. STATE.

### 8 Div. 817.

Court of Appeals of Alabama.
June 4, 1935.

W. C. Rayburn, of Guntersville, for appellant.

A. A. Carmichael, Atty. Gen., for the State.

BRICKEN, Presiding Judge.

From a judgment of conviction for manslaughter in the first degree and a sentence of five years' imprisonment in the penitentiary this appeal was taken.

Appellant was indicted, charged with the offense of murder in the second degree, but his trial resulted in his conviction as above stated. He was charged with killing Sam Aiken by shooting him with a gun.

The evidence discloses that this appellant, defendant below, is a young negro about 20 years old. That he and his brother, who is about 18 years old, were living with their mother in her own house and that the deceased, Aiken, had married these boys' mother about three years prior to the time of the killing complained of in the indictment. That about three weeks prior to the fatal difficulty Aiken, the deceased, and his wife separated, and that Aiken remained in the neighborhood but was not living at the home of his estranged wife at the time he was shot, from which wound he died the next day after the difficulty. The evidence also discloses that on Sunday afternoon this appellant and his younger brother returned to their home and went into the kitchen to eat their supper. When they arrived at their home the deceased was there and appellant spoke to him, but Aiken did not speak in reply. That almost immediately thereafter Aiken, their stepfather, went into the kitchen and cursed and abused Cliff McDaniel, this appellant. The undisputed evidence tends to show that Aiken, deceased, entered the kitchen with his pistol in his hand and stated to appellant that he was going to kill him, and asked Cliff "what was all them damn lies he had been telling on him," and Cliff replied, "I haven't said anything about you," and Aiken replied: "You are a God damn liar you have, I am going to kill you," Cliff got up and Aiken shot at him with his pistol and Cliff went into another room, got a single-barrel shotgun and fired at Aiken at the same time Aiken fired his second shot. Cliff went out of the door and Aiken fired several more shots at him. There was evidence of other witnesses as to threats Aiken had made against appellant on several occasions prior to the fatal difficulty.

From the foregoing and other evidence of like import, we are of the opinion

that the court erred in overruling and denying defendant's motion for a new trial. It is true that the defendant admitted that he fired the shot which resulted in Aiken's death, but in this connection insists that he did so in order to save his own life, and as we view the evidence in this case, this insistence appears to us to be reasonably sustained. So far as we can discover from a careful attentive consideration of the whole case as developed upon the trial in the court below, there are slight, if any, incriminating facts and circumstances tending to show that the homicide was unlawful in contemplation of law. In this case, as in all criminal cases, the accused was presumed to be innocent, and this presumption attended him throughout the trial as a matter of evidence, or until overcome by sufficient evidence to satisfy the jury beyond a reasonable doubt and to a moral certainty that the killing was unlawful under the law and as charged and contemplated in the indictment. Here, the accused was in his own home as, of course, he had the right to be. Being in his own home, he was under no duty to retreat, but, notwithstanding this, the undisputed evidence tends to show that he tried to do so. There is no evidence in this case which tends to show that the accused by word or act contributed in any manner in provoking or bringing on the difficulty which resulted in the death of Aiken. Nor is there anything in the evidence tending to show that he fought willingly. The evidence is conclusive to the effect that he was in imminent danger of losing his life, or of suffering grievous bodily harm at the hands of Aiken at the time he fired the fatal shot. All this, the evidence tends to show. Of course the weight of the evidence, or its probative force, is a question for the determination of the jury, but no court, jury, or other judicial tribunal may capriciously set aside, reject, or ignore the evidence submitted to them for consideration, and as the undisputed evidence in this case tends to show what has been hereinabove stated, it is difficult to understand how the conclusion reached by the court and jury could obtain. In Pilcher v. State, 16 Ala. App. 237, 77 So. 75; certiorari denied 201 Ala. 697, 77 So. 1001, this court said: "The word 'kill' does not necessarily mean any more than to deprive of life. A man may kill another by accident, or in self-defense, and in many other ways without the imputation of crime." And in Barnett's Case (Barnett v. State), 21 Ala. App. 646, 111 So. 318, the court said: "It was but natural that he (defendant) should grab the pistol of deceased when he (deceased) took it from the drawer of his desk, this in order to prevent the deceased from shooting him, for, while the divine law says, 'Thou shalt love thy neighbor as thyself,' neither the divine law nor the law of man require one to love his neighbor better than himself. This coupled with the natural instinct, that of self-preservation, the first law of nature, gives, we think, the most reasonable explanation of the conduct of the accused upon the occasion in question." The foregoing excerpts from the cited opinions are applicable to this case as we see it.

Numerous insistences of error are presented, but we see no necessity of a detailed discussion of these several points of decision except to say it is apparent that error prevailed in some of the rulings of the court complained of. From the view we take of the undisputed evidence in this case, the evidence falls far short of the required measure of proof to constitute the killing here complained of as an unlawful homicide. The court erred in so holding. For the errors indicated, the judgment of conviction, from which this appeal was taken, is reversed, and the cause remanded.

Reversed and remanded.