304 So.2d 275

Reginald **TALLY**

v.

**STATE.**

6 Div. 776.

Court of Criminal Appeals of Alabama.

Nov. 26, 1974.

Louis W. Scholl, Birmingham, for appellant.

William J. Baxley, Atty. Gen., Montgomery, and Quentin Q. Brown, Jr., Asst. Atty. Gen., Birmingham, for the State.

HARRIS, Judge.

Appellant was convicted of robbery and his punishment was fixed at imprisonment in the penitentiary for a term of twenty years. He was represented at arraignment and at trial by a court-appointed lawyer. He pleaded not guilty. He gave notice of appeal at the time of sentencing, but elected to start serving his sentence pending appeal. He was furnished a free transcript, and new counsel was appointed to represent him on appeal.

At approximately 8:30 A.M. on February 2, 1973, two black males entered a grocery store located at 414 First Avenue, North, in Birmingham. They bought some orange juice and some buddy bars. They stayed in the store about fifteen minutes while they ate and drank their purchases, and then left. Around 1:40 P.M. the owner, Roy Rogatta, returned to his store after making a delivery order. He noticed a 1966 or 1967 two-door maroon Mustang parked in an alley between the grocery store and a self-service filling station nearby. The left rear fender of the Mustang was smashed and the vehicle was dirty. He wrote down the tag number before he re-entered his store.

About five minutes later, the same two black men, who were in the store and bought orange juice and candy bars at 8:30 that morning, came in the store again. One was tall and the other was a little shorter. The small one rushed past the owner and went to the rear of the store near the meat counter, where the owner's 75 year old father-in-law was sitting in a chair. He picked up a 30-30 Infield rifle and emptied it, the cartridges falling on the floor. The tall man walked up to the owner and put a pistol to his head and ordered him to lie on the floor. While he was lying on the floor, the man with the pistol removed his billfold from his hip pocket and got $200.00 in United States currency from his shirt pocket, along with some checks. He told the store owner not to move, saying, "I'll blow your ——— ——— brains out if you move." The other man forced the father-in-law to open the cash register and he took $125.00 in currency from the register.

The man with the pistol told his companion to give him some tape saying he was going to "tie this —— —— —— —— up", referring to the father-in-law. The store owner told his father-in-law to give him the tape. The man with the pistol said, "Shut up or I'll kill you", and stuck the gun to the store owner's head again. They didn't find the tape and both robbers ran out of the store.

The robbery was reported to the Police Department and a uniformed officer was at the store in five minutes. He was given a description of the two robbers and also the tag number of the Mustang automobile. Mr. Rogatta told the officer that the man

who pulled the pistol on him had a thin face and was clean shaven; that he was wearing mixed-color pants, a dungaree jacket and white ski cap.

The man operating the service station next door testified that at 1:30 P.M. on February 2, 1973, three black men drove into the service station and stopped beyond the gas pumps. All three got out of a 1966 maroon Mustang with a smashed rear fender. One of the men raised the hood and the three seemed to be checking the motor. He saw two of the men, one taller than the other, walk toward the grocery store that was robbed. He got a good look at both men. Shortly after they walked toward the store, the third man got in the Mustang and drove to an alley between the store and service station and parked with the motor running. About five minutes later, the other two men came back to the Mustang at a fast pace and got in the car. The Mustang was driven by the service station at a rapid speed. The operator saw the faces of the men again as they were only fifteen yards away. He recognized the two who left the Mustang and walked in the direction of the store. He tried to get the tag number but was able to write down the last three numbers of the tag.

Over the next few days, two city detectives brought numerous photographs of suspects to the store and the victim identified appellant as the man who put the pistol to his head, threatened to kill him, and robbed him and his store. He could not identify the other robber.

The service station operator was shown the same photographs, and he identified both men who walked in the direction of the store and returned to the Mustang five minutes later.

Two weeks later, the investigating officers interviewed appellant at the Fairfield City Hall. He was given the *Miranda* rights and warnings and told the officers he understood his rights and was willing to give them a statement. The officers made notes of the interview, and at the conclusion of the interrogation, appellant was given a copy of his statement.

He told the officers that he (appellant), Shakey (James Hard), and Boo Boo (whose last name is Stanley) went to the First Avenue Grocery in a Maroon Mustang; that he and Shakey had thirty-eight revolvers; that Boo Boo unloaded Mr. Rogatta's rifle. He told the officers where they parked the car and how they robbed the store.

A lineup was conducted in which there were six black males as similar in looks, height, and weight to the appellant as possible. This lineup was viewed separately by the victim of the robbery and the service station operator and both, without the slightest hesitation, identified appellant as on of the robbers, and both made a positive in-court identification of appellant, pointing directly at him.

At trial the proper predicate was laid for the admission of appellant's confession showing the confession was made without threats, coercion, or promises of any kind. The trial court determined that the confession was freely, voluntarily and intelligently made, and this evidence was submitted to the jury.

One of the officers was asked on direct examination what appellant said with reference to the robbery at Rogatta's, and he made the following unresponsive answer:

"I ask him could he tell us the places that he had participated in robberies." There was an objection and a motion for a mistrial, followed by the court's ruling:

"The Court: Sustain the objection. Ladies and Gentlemen, do not consider that statement of this police officer as evidence in this case.

"Mr. Sheffield: May it please the court, for the record the defense renews its request for a mistrial on the ground that

by instruction you cannot remove from the jury's mind the inference placed there by the officer's testimony that this man was suspected of other robberies.

"The Court: Overruled.

"Mr. Sheffield: We reserve an exception. And we ask the court to urge as strongly as possible . . ."

"The Court: Ladies and Gentlemen I can't tell you in words strong enough that that remark is not evidence in this case and there is no evidence that this defendant is charged with any crime other than for what he is being tried. This case is what he is being charged for. I instruct you in the strongest terms not to consider that as evidence in this case. You are sworn to try this case on the evidence from this witness stand as to this case and this case alone. I instruct you not to consider that . . ."

Appellant did not testify and offered no evidence whatsoever in his behalf.

The only real insistence of error on this appeal is the action of the trial court in overruling the motion for a mistrial as hereinabove set forth.

 The prompt withdrawal of improper evidence and strong instructions by the court to the jury to disregard the improper statement of the witness, and specifically and unequivocally directing the jury to give it no consideration cures the error. Pelham v. State, 23 Ala.App. 359, 125 So. 688; Reaves v. State, 33 Ala.App. 296, 33 So.2d 376.

There was no motion to exclude the state's evidence; no motion for a new trial; no request for the affirmative charge; no exceptions to the oral charge of the jury, and the only adverse ruling was the denial of a motion for a mistrial as above noted. In this state of the record, nothing is presented to this court for review. Eady v. State, 48 Ala.App. 726,

267 So.2d 516; Davis v. State, 48 Ala.App. 629, 266 So.2d 839.

Accordingly, the judgment of conviction is affirmed.

Affirmed.

ALMON, TYSON, and DeCARLO, JJ., concur.

CATES, P. J., concurs in result.