Clinton Jackson, his brother Billie J. Jackson, and Dale Smith were charged in a single indictment with kidnapping in the first degree. This crime involved the kidnapping of Thomas W. Salo, the vice president of the First Alabama Bank of Evergreen. All three defendants were jointly tried. Clinton Jackson and Smith were convicted for kidnapping in the first degree. Jackson was sentenced to life imprisonment. Smith was sentenced to 35 years' imprisonment as a habitual felony offender. The trial judge granted codefendant's Billie J. Jackson's ("B.J.") motion for a judgment of acquittal at the close of the State's evidence. "B.J." then testified against the appellant as a witness for codefendant Smith. This Court affirmed Smith's conviction in Smith v. State, 590 So.2d 388
(Ala.Cr.App. 1991). This is Clinton Jackson's appeal from his conviction.
 I.
The appellant contends that his trial counsel was ineffective under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052,80 L.Ed.2d 674 (1984). Specifically, the appellant alleges that counsel 1) failed to make a reasonable investigation into his alibi defense, 2) failed to pursue the issue of the appellant's mental competence to stand trial, 3) failed to make a timely motion for severance, 4) failed to investigate the prejudice caused by pretrial publicity, 5) failed to timely file a motion to dismiss the indictment, 6) failed to secure bond for the appellant pending trial, and 7) failed to object to the prosecution's use of the telephone records on the appellant's residence.
This issue was never presented to the trial court. After the appellant was sentenced on August 3, 1989, his appointed *Page 169 
trial counsel requested permission to withdraw because the appellant "has not been happy with our services." R. 1658. The trial judge noted that the appellant "has expressed in his pre-sentence investigation report that Defendant was dissatisfied with his counsel and that it would be a conflict between attorney and client, if above referenced attorney continued in the case." R. 1659-60. Trial counsel filed a motion for new trial on August 24, 1989, but did not raise the issue of ineffective assistance of counsel. Trial counsel's motion to withdraw was granted on September 27, 1989.
The record contains no objection raising the issue of ineffective assistance of counsel. The rule followed by this Court is that claims of ineffective assistance of counsel will not be considered for the first time on direct appeal,Jackson v. State, 534 So.2d 689, 692-93 (Ala.Cr.App. 1988);Kelley v. State, 568 So.2d 405, 412 (Ala.Cr.App. 1990), with the exception that this Court "has the authority to remand a case, if it determines justice would require it, to the trial court for a determination to be made on the defendant's claim that he was inadequately represented at his trial," Thompson v.State, 525 So.2d 820, 831 (Ala. 1985) (emphasis in original). See also Miller v. State, 568 So.2d 1253, 1254 (Ala.Cr.App. 1990).
This is not a case where justice demands a remand to allow the appellant to litigate the issue of the alleged ineffective assistance of his trial counsel. In support of that conclusion and not on the substantive issue of counsel's alleged ineffectiveness, this Court makes the following observations: The record indicates that the appellant, at least initially, hampered defense counsel's investigation by refusing to cooperate with his appointed counsel. R. 17, 60. The appellant testified in his own behalf, and that testimony is simply incredible considering the overwhelming evidence of guilt. The appellant was examined at a local mental health facility. The appellant advised his counsel that he did not want any part of a psychiatric examination and that he was completely capable of standing trial. R. 108.
Defense counsel did oppose a separate trial of the appellant. R. 58. This action causes some concern in view of the antagonistic defenses presented by the defendants at trial. SeeEx parte Washington, 562 So.2d 1304 (Ala. 1990). However, both codefendants had given statements to the police. Under Brutonv. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476
(1968), a codefendant had to testify as a witness before a statement could be used against the appellant if the three defendants were tried jointly. The record reflects that defense counsel made a conscious choice to oppose severance. "Because of the diverse methodologies employed by defense counsel and the broad range of opinion about how to best address a particular situation, the burden is upon the defendant to overcome the presumption that the challenged action constitutes 'sound trial strategy.' " Ex parte Womack, 541 So.2d 47, 66
(Ala. 1988).
It is not clear that a change of venue would have been beneficial to the appellant because it appears that the appellant was well respected in the community. He had been an amateur boxer on the United States Olympic team and later a professional boxer. He had also been employed by a police department and had worked in youth counseling.
As for the last three specific deficiencies argued by the appellant, we note the following: The trial court did not strike the appellant's motion to dismiss as being untimely. Counsel was effective in securing a reduction of bond. R. 14, 25. Defense counsel did not make any objection to the state's introduction of the records of the telephone company. R. 1550-51.
It is not clear to this Court that even if defense counsel was ineffective, that there exists a reasonable probability that the outcome of the trial would have been different but for counsel's errors. Strickland v. Washington, 466 U.S. at 694,104 S.Ct. at 2068. Even appellant's counsel on appeal recognizes that "no single circumstance or omission by Appellant's attorney would justify a remand of this case," although he argues that the totality of the circumstances *Page 170 
and all of trial counsel's alleged "omissions and deletions" result in the ineffective assistance of counsel. Appellant's brief at 17.
 II.
The appellant argues that a pair of boots and a wallet were obtained as a result of an illegal search and seizure.
The appellant was arrested at his residence in Atlanta, Georgia, on the night of the same day as the charged kidnapping. The arrest was made by officers of the Clayton County Police Department and officers of the Clayton County Sheriff's Fugitive Squad. There was testimony that an outstanding Alabama warrant had been issued for the appellant. R. 706. There was testimony indicating that the appellant was initially confronted by an officer on a landing outside of the residence as the appellant exited his residence and that the officer physically forced the appellant back into the apartment. R. 707. Detective Ron Evans, the officer who initially confronted the appellant, testified: "The door came open and he [appellant] began coming out, whether his foot ever hit the metal landing or not, I'm not sure, but, we were face to face and I confronted him right there in the door jamb, right there in the doorway and forced him back into the apartment." R. 1251-52.
After securing the appellant, the police searched the apartment and recovered a wallet and a pair of snake skin boots. The record does not reveal where in the residence those items were discovered. The next day, the police obtained a search warrant and again searched the apartment.
When the appellant was confronted by the police, there were only two residents of the apartment, the appellant and Marie Pointer. Although there was testimony that the appellant lived alone in the apartment, which was registered in his name, R. 1158, the appellant himself testified that "Marie and I lived there." R. 1140. Most significant was Detective Chris Butler's testimony that a search of the residence was conducted "after receiving consent from Marie Pointer." R. 693. That testimony was not challenged at trial.
On appeal, the appellant argues that the search was illegal and could not be justified as a search incident to arrest because that search was not confined to the immediate area of the arrest. "If a search of a house is to be upheld as incident to an arrest, that arrest must take place inside the house, . . . not somewhere outside. . . ." Vale v. Louisiana, 399 U.S. 30,33-34, 90 S.Ct. 1969, 1971, 26 L.Ed.2d 409 (1970).
 "We also hold that as an incident to the arrest the officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched. Beyond that, however, we hold that there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene."
Maryland v. Buie, 494 U.S. 325, 334, 110 S.Ct. 1093, 1098,108 L.Ed.2d 276 (1990).
However, the issue now raised on appeal was not preserved by timely objection at trial.
A ground of the appellant's pretrial motion to dismiss the indictment alleged that "[t]he Indictment is predicated upon matters, facts, documents and evidence that were obtained as the consequence of an illegal search and seizure. . . ." CR. 23. That objection was not timely pursued, at least with regard to the wallet and the boots.
Furthermore, the boots were never exhibited to the jury or introduced into evidence at trial. Therefore, any illegality in their seizure constitutes harmless error. Rule 45, A.R.App.P.
At trial, Detective Butler testified without objection that the boots and the wallet were recovered in the search of the appellant's residence. R. 658. Detective Ron Evans of the Clayton County Police Department also testified without objection to *Page 171 
the search following the appellant's arrest. When the State offered the wallet (State's exhibit 32) into evidence, the only objection was: "Objection. Improper predicate, improper foundation, chain of custody has not been completed." R. 885.
Only after witnesses had testified before the jury concerning the items recovered in the search was there an objection on the grounds that "they were taken illegally by lack of a search warrant from this man's home, . . . and in violation of his rights, constitutional rights." R. 873. However, it appears that this objection was directed only toward a derringer, a pistol, and bullets discovered in a plastic garbage bag that the appellant was holding when initially confronted. In response to that objection, the trial judge ruled that "at least on the pistols, you have a Terry versus Ohio situation which blossomed into a lawful search incident to — search incident to a lawful arrest." R. 874. The trial court did not specifically address the seizure of the wallet.
Later, during the course of the trial, the appellant again raised the issue of illegal search and seizure in objecting to the admission of State's exhibits 21 (sample of rubber tire), and exhibits 22 and 23 (lengths of rope). At that time, the following occurred:
 "MR. SORRELLS [assistant attorney general]: We respond to that. Officer Butler said he had a consent, plus, that ground was not raised until after that evidence — that search was already admitted, Your Honor, and I think you've got to do that before the evidence comes in. You can't do it in reverse. He stated he had a consent and there was no challenge to that consent.
 "MR. OWENS [appellant's defense counsel]: Of course, our time to really rebuff [sic] that or refute that consent has not come up yet, Judge. The only way I could have done it at that time was just put my client on the stand, at that point. But, we questioned him [officer Butler] about his illegal search and, of course, his answer was I had consent. But, there's no way you can — that I saw, at that time, to really refute his statement. But, it will be done.
 "MR. SORRELLS: Judge, they didn't object to it at that time and you've got to object to the introduction of the articles of the search at the time they're offered.
 "THE COURT: I think certainly you could have had a voir dire on the search at that time. We could have had a hearing outside the presence of the jury where your client could have taken the stand had he desired to do so.
"MR. SORRELLS: Yes, sir.
"THE COURT: I'm going to overrule your objection."
R. 1051-53.
"The statement of specific grounds of objection waives all grounds not specified and the trial court will not be put in error on grounds not assigned at trial." Ex parte Frith,526 So.2d 880, 882 (Ala. 1987), quoted in Jackson v. State,534 So.2d 689, 691 (Ala.Cr.App. 1988). "Matters not objected to at trial cannot be considered for the first time on appeal, since review on appeal applies only to rulings by the trial court."Adams v. State, 585 So.2d 161 (Ala. 1991). The appellant has failed to direct this Court to the portion of the record wherein the objection raised on appeal was raised at trial. We conclude that the issue of the legality of the search which resulted in the seizure of the wallet was never properly raised at trial and is not preserved for appellate review.
 III.
In the companion case of Smith v. State, 590 So.2d 388
(Ala.Cr.App. 1991), released this same date, this Court holds that once the prosecutor had articulated race-neutral reasons for striking black venire persons, codefendant Smith had no right to cross-examine those venire persons struck to determine the accuracy of the information upon which the prosecutor's reason for the exercise of the strikes were based. We also held that codefendant Smith did not have a right to question any individual who supplied the prosecutor with information concerning any member of the jury venire. "Neither Batson norBranch mandates *Page 172 
that a defendant be given the opportunity to cross-examine jurors or other witnesses in order to establish that the State's reasons are based on sham or pretext. . . .Branch does not encompass the cross-examination of jurors or allow a defendant to go behind a prosecutor's information to determine if such information was true." Smith, 590 So.2d at 390.
We note that the trial judge did allow the defense to examine Larry Ikner, an investigator for the district attorney, concerning the manner in which he obtained information on the members of the venire.
In addition, the observation is made that the original jury selected by the parties in this case consisted of six black members and six white members. After finding that the appellant had established a prima facie case of racial discrimination in the State's use of his peremptory strikes, the judge had the prosecutor state his reasons for striking black venire members. The trial judge found that the prosecutor's reasons for striking two black members of the venire were not race-neutral. The judge then placed the two venire members and all the remaining qualified venire members back into a venire, required an entirely new jury to be selected, and refused to allow the prosecution to strike those two particular venire members. The jury which was then selected — the jury which actually tried the appellant — was composed of nine black members and three white members. We find no error under either Batson v.Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), orEx parte Branch, 526 So.2d 609 (Ala. 1987). See also Harrell v.State, 571 So.2d 1270 (Ala. 1990), cert. denied, ___ U.S. ___,111 S.Ct. 1641, 113 L.Ed.2d 736 (1991).
 IV.
The appellant argues that the victim's in-court identification of the appellant as one of his kidnappers was corrupted by an improper pretrial photographic lineup and was inadmissible. This argument is based on the fact that the photograph of the appellant was taken from the files of a local newspaper and had a different background from the remaining "mug shot" type photographs employed in the lineup which were taken at the county jail.
The actual photographs are not contained in the record on appeal. There was testimony that all the photographs were in black and white because the black and white newspaper file photograph was the only photograph of the appellant that could be obtained at that time (the day of the crime). R. 418, 425. Compare Hull v. State, 581 So.2d 1202, 1204 (Ala.Cr.App. 1991) ("photographic spread containing a black and white photograph of the defendant and color photographs of four other subjects was 'impermissibly suggestive' ").
"The fact, in and of itself, that there was some slight discrepancy in the physical appearance among the participants of a lineup does not taint that identification procedure or render it suggestive as a matter of law." Lewis v. State,399 So.2d 907, 909 (Ala.Cr.App. 1981). See Annot., 39 A.L.R.3d 487 (1971). We find this principle applicable to photographic spreads.
Furthermore, the trial judge found that there was an independent basis under Neil v. Biggers, 409 U.S. 188,93 S.Ct. 375, 34 L.Ed.2d 401 (1972), for the victim's identification of the appellant and that there was no likelihood of misidentification. R. 467-469. The record supports those findings.
 V.
The trial court improperly admitted soil samples taken by an agent of the Federal Bureau of Investigation at the scene of the crime. Suttle v. State, 565 So.2d 1197, 1198-1200
(Ala.Cr.App. 1990). Although Alabama Bureau of Investigation Lieutenant Charles Andrews observed F.B.I. Agent William McGinnis collect at least some of the samples, those samples remained with the agent for two weeks before the agent delivered the samples to Andrews. At trial, the agent did not testify, and Andrews could not account for the whereabouts and integrity of the samples during those two weeks. Here, there was a complete break in the chain of custody. *Page 173 
After the soil samples had been received into evidence, an expert forensic witness testified that he compared those samples with tennis shoes belonging to codefendant Smith and determined that the soil on the shoes matched the soil recovered from the scene of the crime. R. 929. Sometime after the soil samples had been admitted into evidence over the appellant's objection, the trial judge, after hearing further testimony from Lieutenant Andrews, whose testimony was interrupted by that of other witnesses, decided that the State had failed to connect the soil samples in evidence with the soil at the scene of the crime. The trial judge then instructed that jury that he had decided "to strike the admission of the soil samples in this case."
 "And I'll — that was State's Exhibit 18 which I am removing from your consideration together with all testimony regarding the soil samples. I have decided that that's a mater that is not properly before you and that you should not consider any of the testimony concerning these soil samples either by the person who observed them being taken or the persons who testified about them subsequently and that's a matter that you should just treat as if it had never existed."
R. 1044. The appellant requested a mistrial, which was denied by the trial judge. Upon inquiry by the trial judge, the appellant's defense counsel specifically stated: "I don't have any special charges on the soil samples, Judge." R. 1047, and stated that he was "satisfied" with the judge's instructions on this matter. R. 1048. All of this occurred during the presentation of the State's case-in-chief.
After the prosecution had rested its case, codefendant Smith took the witness stand in his own behalf and admitted being at the scene of the crime. R. 1382. In addition, there was other physical evidence placing the appellant at the scene.
"The question of admitting all the testimony of a witness, and then excluding it, is addressed largely to the sound discretion of the trial court." Chillous v. State,405 So.2d 58, 62 (Ala.Cr.App. 1981). Where the jury is properly instructed, "it must be presumed that they followed the judge's instructions." Kennedy v. State, 472 So.2d 1092, 1105
(Ala.Cr.App. 1984), affirmed, 472 So.2d 1106, (Ala.), cert. denied, 474 U.S. 975, 106 S.Ct. 340, 88 L.Ed.2d 325 (1985). "Courts have been perplexed in laying down satisfactory rules where illegal evidence, calculated to prejudice the defendant, has been received, and subsequently excluded; but it may be regarded as settled, in this state, that the admission of illegal evidence, which is subsequently excluded, and the jury instructed to disregard such evidence, cures the error and vitiates the exception reserved to its admission." Smith v.State, 107 Ala. 139, 144, 18 So. 306, 308 (1895). The instructions to the jury to disregard such evidence should be "direct, specific, and unequivocal." Pelham v. State,23 Ala. App. 359, 361, 125 So. 688, 690 (1930). "Where evidence has been erroneously admitted, a clear instruction to the jury that it is not to be considered will ordinarily be allowed to have the effect of curing the error, though this Court has always regarded the practice with cautious disapproval." MarylandCasualty Co. v. McCallum, 200 Ala. 154, 156, 75 So. 902, 904
(1917). Because defense counsel announced "satisfied" with the instructions of the trial judge, he cannot now be heard to complain that those instructions to disregard were not sufficient to erase the testimony from the minds of the jury. See Lauderdale v. State, 555 So.2d 799, 802 (Ala.Cr.App. 1989).
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur. *Page 174