The appellant, Linda Yvette Johnson, was convicted of two counts of unlawfully selling, furnishing, or giving away cocaine, in violation of § 20-2-70, Code of Alabama (1975). She was sentenced to two five-year terms of imprisonment to run concurrently. She was also ordered to pay $150 restitution.
 I
The appellant argues that the State used its peremptory strikes to exclude potential black jurors and thereby violated her right to equal protection. The record indicates that following the striking of the jury, the defense counsel objected on the basis of systematic exclusion of blacks from the jury, in that the State struck all of the potential black jury members with the exception of one. See Batson v. Kentucky,476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) ("[A] defendant may establish a prima facie case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial." 476 U.S. at ___,106 S.Ct. at 1722-23. Thereafter, in accordance with Batson and with Ex parte Jackson, [Ms. 84-1112, Dec. 19, 1986] (Ala. 1986), the prosecutor came forward with valid non-racial reasons for its strikes.
 " 'The reasons given in response to the court's inquiry need not be equivalant to those for a challenge for cause. If the party shows that the challenges were based on the particular case on trial, the parties or witnesses, or characteristics of the challenged persons other than race, then the inquiry should end and jury selection should continue.' "
Ex parte Jackson, supra, quoting State v. Neil, 457 So.2d 481,487 (Fla. 1984), clarified by State v. Castillo, 486 So.2d 565
(Fla. 1986).
The prosecution gave the following reasons at trial for striking the potential jurors:
 "[Prosecutor]: [L]ooking down the strike list, the first black that I show being struck was number 4, Willie J. Bailey. [Defense counsel] would insist on the reason?
"[Defense counsel]: Yes, sir.
 "[Prosecutor]: Mr. Willie Bailey was observed by people in my office talking with several people who have drug cases on this docket. There was no response of him knowing this defendant. There was the general question, of course, of the Court. But that was preemptory challenge based on the fact that I felt there was some friendship or acquaintance between the juror and people with drug charges. Number 7 . . . I show to be the next black juror struck. *Page 821 
". . . .
 "[Prosecutor]: Shelley Burns is number 7, a black male that was struck. I prosecuted myself several Burns black males. And I believe the relatives of Shelley Burns. But at the same time there was no response to any vire dire question of the jurors knowing them. Number 14 was Maria Farrow which I have to be young — black female from Camp Hill, Alabama. Had information that Ms. Johnson was at least known to her along with several other individuals from Camp Hill. Nowhere was there any response from any of the jury venire that they knew this given defendant. That possibly meant concealment of the relationship or at least a knowledge. And several of those cases I think that is the reason [sic]. Number 15 is Rufus Foster which I struck based on general bad reputation on behalf of the law enforcement community. Rufus Foster number 15. It's a possibility that he has been involved in at least abuse of illegal drugs. Eugene Turner, a black male number 19 who is presently on the petit jury venire. Lee Kennedy to my knowledge is an — lets say Kennedy and Larry Crenshaw had some kind of relationship, at least friendship. His name may well come up during the trial of this case.
". . . .
 "[Prosecutor]: Number 22 Felix Lockhart have information [sic] that possibly two relatives of Mr. Lockhart died of suscipious circumstances that may have been drug overdose and information that its used by the family. Number 27, Willie Merchant from Camp Hill. A black male that law enforcement officers told me in their opinion knew Mrs. Johnson. On the voir dire questions both from the Court and myself there was never a response of knowledge of Mrs. Johnson. And a general reputation of that individual being somewhat questioned by law enforcement.
 "Donna Pogh same situation. Juror number 35, Camp Hill, Alabama. Had information that she should know or possibly did know the defendant. And no response to the voir dire questions. Number 38 Bernice Rowe. I had been involved with the prosecution with number individuals [sic] with the last name Rowe from here. I remember Bernice. I know she works at the Bank of Dadeville. But at the same time its my belief she was a relative of several individuals in the past five years that I've been responsible for taking some pleas from Dadeville as a result of criminal prosecution and conviction. Kerry Turner number 42. To my knowledge Kerry Turner was a relative of Mattie Pearl Turner who I convicted of manslaughter I believe in 1983 or 1984. A case involving a guilty plea against Mattie Pearl. She also had a sister that the law enforcement officers told me had died of what they believed to be a drug overdose. Larry Vines, number 43. Another defendant that was seen talking with people known to have drug charges on this current pending docket. We felt that based on the information I had they were at least acquaintances. Also Vines is from Camp Hill and denied even knowing Linda Johnson."
The trial court is in the best position to determine whether the prosecutor's reasons are adequate. Minnifield v. State, [Ms. 6 Div. 129, Feb. 10, 1987] (Ala.Cr.App. 1987). "Because the prosecutor's strikes were explained and were not 'whimsical or fanciful,' [Ex parte Jackson, supra], we find no abuse of discretion by the trial court." Minnifield v. State, supra. Furthermore, the defense counsel's demands to know the reasons for the prosecutor's strikes of potential Caucasian jurors does not fall under the rule in Batson.
 II
The appellant contends that the trial court erred in failing to sustain her objections to the State's introduction of evidence regarding crimes committed by other individuals. Specifically, State's witness Hap Gregg, an investigative detective with the City of Auburn Police Department, was allowed to testify that he was involved in an undercover narcotics operation at a *Page 822 
place known as Data Tech, when he first came into contact with the appellant. Gregg testified on redirect examination that he made seventeen cases while involved with Data Tech. Gregg did not testify to any of the details concerning the other cases. The trial court overruled the defense counsel's objection, stating, "[B]ased on the nature of cross-examination I believe it's fair to show since the witness's recall had been questioned."
The defense counsel, during the cross-examination of Gregg, attempted to discredit his testimony by showing that he was confusing the appellant's case with the cases involving some of the other individuals at Data Tech. Pursuant thereto, the defense counsel introduced evidence of some of the other cases. The following transpired during cross-examination:
 "Q Mr. Gregg, the occasion that you went over to Linda Johnson's house if I recall your testimony, you're saying that is April of 1986; is that correct?
"A Yes, sir.
"Q Could it have been May the 3rd, 1986?
"A No, sir.
"Q What day in April was this?
"A The first day, are you asking me the —
 "Q The day that you went over to Linda's and you said that everyone there was smoking marijuana and drinking vodka. When was that, sir?
 "A I am not — let's see. It's a different case. And I do not remember what date that was because I have not gone over that case at this time.
"Q Was it in April or was it in May?
"A It was in April.
"Q Larry Crenshaw was there? Is that correct?
"A Yes, he was.
"Q Bobby Gollet was there?
"A Yes, he was.
"Q Angie Tuck was there?
 "A Yes, she was, two other white females and Linda's four or five, six-year old son.
". . . .
 "Q Now, Larry Crenshaw, did you see him smoking marijuana?
"A Yes, sir, I did.
 "Q Did you later try to buy marijuana from Larry Crenshaw?
"A Yes, I did.
 "Q How many times did you try to buy marijuana from Larry Crenshaw?
"A Really only once.
"Q Really only once?
"A Uh-hu.
"Q When was that?
 "A It was — I can't give you the exact date. But I know it will be near the end of the operation.
"Q End of May?
 "A No, sir, end of the operation which would have been approximately the second week of May.
"Q He didn't sell you any, did he?
 "A No, sir. But he told me where — what it was was he told me wait and I'll go get you some. And then he looked at his watch, and he said no, I'm late for work. I've got to go to work at the police department."
The following also transpired during the cross-examination of Gregg:
 "Q . . . You remember two specific occasions you asked her [the appellant] if she knew where you could get some dope?
"A Is this while we were working at Data Tech?
"Q While you were working at Data Tech.
"A Yes.
"Q And this —
 "A Hold it, wait. One thing. I'm getting something mixed up.
"Q Okay.
 "A I really never knew her while we were working at Data Tech because she did work at — we worked different shifts. I was thinking of Angie Turk.
"Q Angie?
"A Uh-hu.
 "Q So you asked Angie if she knew where you could get you some dope?
"A Yes, sir, about two different occasions. *Page 823 
"Q Did you ask Linda whether or not she could?
"A When we were working at Data Tech?
"Q Yes.
"A No. We didn't work on the same shift.
"Q So you are getting Angie and Linda confused?
"A Just on this one incident.
"Q Just this one incident?
"A Uh-hu.
"Q You didn't get them confused on May the 6th?
"A No, sir."
The trial court's action in overruling the defense counsel's objection was proper in that the defense counsel opened the door to questions on redirect concerning this subject. No mention was made of the other cases prior to the cross-examination. Therefore, "the defense counsel, through his own questioning, elicited testimony regarding the prior incident[s] and, thus, invited the error. See Dixon v. State,481 So.2d 434, 438 (Ala.Cr.App. 1985); Shadle v. State, 280 Ala. 379, 194 So.2d 538 (1967)." Holmes v. State, 505 So.2d 1308,1311 (Ala.Cr.App. 1987).
AFFIRMED.
All the Judges concur.