Appellant Charles Augusta Ward was indicted for second degree robbery in violation of § 13A-8-42, Code of Alabama 1975. Ward pleaded guilty to the lesser included offense of third degree robbery. He was sentenced to 42 years' imprisonment. Less than a week later, appellant asked to withdraw his guilty plea. The judge permitted withdrawal of the plea, restored the case to the trial docket, and then recused himself.
The trial resulted in a jury verdict of guilty of second degree robbery. Appellant was then sentenced to a term of life imprisonment under the Habitual Felony Offender Act, § 13A-5-9, Code of Alabama 1975, having two prior felony convictions. He was also ordered to pay $25 to the Victim's Compensation Fund.
The evidence tended to show that on the evening of February 7, 1986, Mr. Chenault was working alone in his store, "Country Food Town." Because he was alone, Mr. Chenault turned on the video camera which he had installed for surveillance purposes. He then went to the back of the store and began stocking the coolers with cold drinks. Two black men entered the store. They walked to the back of the store where Mr. Chenault was stocking the coolers and began asking him about the meats. In a few minutes, the cash register began to make a buzzing sound. Before Mr. Chenault could figure it out, one of the men stuck his hands in his coat pockets and said, "If you want to live, open the cash register." Mr. Chenault went to the cash register and began taking the money out for the robbers. One of the men decided he was taking the money out too slowly, so he moved Mr. Chenault aside and took the whole cash register drawer. The drawer contained about $350 in cash and food stamps. As one man was heading out with the register drawer, the other told Mr. Chenault to go into the back room and remain there. Mr. Chenault went into the back room and the two men made their getaway.
After the police arrived, Mr. Chenault showed them the videotape of the events of that evening. Within the hour they had taken one of the robbers into custody. The tape was subsequently shown to several other police officers. One of these officers recognized the other man on the tape as the appellant Charles Augusta Ward, whom he knew as "Duck." The appellant was then arrested based on this identification.
 I
Appellant raises the issue of whether the trial court erred by allowing the state to strike five of the six potential black jurors over his objection based on Batson v. Kentucky,476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Appellant contends that he was denied equal protection due to the alleged purposefully discriminatory use of peremptory challenges by the state.
On a review of the record we find that four of the five potential black jurors who were struck were struck because of past criminal records. The state also struck the only potential white juror with a criminal record. Such action in which non-black jurors have been challenged for the same or similar characteristics as black jurors who are struck has been deemed to be indicative of neutrality and is evidence which tends to overcome the presumption of discrimination.Ex parte Branch, 526 So.2d 609 (Ala. 1987). In addition, we have held that strikes based on previous criminal records are not racially discriminatory in nature as such; this reason is deemed to be "race-neutral." Bryant v. State, 516 So.2d 938
(Ala.Cr.App. 1987); Johnson v. State, 512 So.2d 819
(Ala.Cr.App. 1987).
The fifth potential black juror struck by the state was struck because her son had been previously represented by defense counsel. The reason given for striking this potential juror was based on considerations other than race. See, Sheltonv. State, 521 So.2d 1035, 1038 (Ala.Cr.App. 1988), writ denied,521 So.2d 1038 (Ala. 1988). Appellant argues that if a reason does not measure up to a sufficient reason to strike a juror "for cause," then it is *Page 409 
insufficient for a peremptory strike. The law is otherwise.Johnson, supra, at 820. Here, reasons were based on considerations other than race and the trial court correctly so ruled. We find no error.
 II
Appellant also contends that a chain of custody of the surveillance videotape was not sufficiently established.
The recent case of Molina v. State, 533 So.2d 701
(Ala.Cr.App. 1988), sets out the law in this regard as follows:
 "We adopt the 'better reasoned rule' that 'video recordings are admissible on the same basis as other types of photographic evidence, i.e. admissible when verified by some witness who can state that they are a reliable reproduction of the recorded picture and sound.' C. Scott, Photographic Evidence, supra, § 1297 at 98 n. 42.20 (1987 Pocket Part).
 " 'The motion picture on a film or videotape is at least a partial verification of the reliability of the sound track because the picture usually enables the viewer to tell who is speaking and in some instances, gestures and other movements of the speakers may make indistinct words understandable.' Scott at 95.
 "Accordingly, we reaffirm the predicate for admitting videotape evidence* announced by our Supreme Court in UAW-CIO v. Russell, [264 Ala. 456, 88 So.2d 175 (1956), aff'd, 356 U.S. 634, 78 S.Ct. 932, 2 L.Ed.2d 1030 (1958)] and we specifically reject the dicta in Voudrie v. State, 387 So.2d [248] at 256 [(Ala.Cr.App. 1980)], and cases following it, that have upheld the more stringent seven-pronged predicate for admitting sound recordings. '[T]he stringent requirements sometimes made for the verification of sound tape recordings should not be applied to the audio portion of videotape recordings.' C. Scott, Photographic Evidence, supra, at 95. The 'seven-pronged test is now usually considered obsolete, even for sound recordings,' id. at 98 n. 42.20, and 'has been abandoned in the better reasoned cases in favor of a rule holding that sound tapes like photographs are admissible when a witness testifies they are reliable representations of the subject sound,' id.
at 97 n. 42.5.
 "The videotape was thus admissible without a showing of its chain of custody. '[A] proper foundation laid for the accuracy of what the film portrays obviates the need to establish a chain of custody to demonstrate its authenticity.' State v. Deering, 291 N.W.2d 38, 41 (Iowa 1980). Accord, Mikus v. United States, 433 F.2d 719, 725-26 (2d Cir. 1970); Paramore v. State, 229 So.2d 855, 859 (Fla. 1969), vacated on other grounds, 408 U.S. 935, 92 S.Ct. 2857, 33 L.Ed.2d 751 (1972); Bremer v. State, 18 Md. App. 291, 307 A.2d 503, 535
(1973), cert. denied, 415 U.S. 930, 94 S.Ct. 1440, 39 L.Ed.2d 488 (1974) (Videotape of attempted assassination of Governor George Wallace admitted without proving chain of custody of the film)."
In the case at bar, Mr. Chenault, who had viewed the videotape was able to testify that this videotape portrayed a reliable representation of what had happened at "Country Food Town" on the evening of the robbery. Such a foundation showing the accuracy of the videotape obviates the need to establish such a chain of custody as appellant contends was necessary. Molina, supra at 709.
Therefore, the trial court did not err in allowing this videotape into evidence.
AFFIRMED.
All the Judges concur.
* Although Molina referred to the reaffirmation of a rule regarding videotape, it is clear that Molina was actually applying to videotape a rule previously announced in regard to motion picture films. *Page 410