The appellant, Robert Boyd Nelson, was convicted of manslaughter, in violation of § 13A-6-3, Code of Alabama 1975. Specifically, he was convicted of causing the death of one Dolly Lynn by his operation of a motor vehicle while under the influence of intoxicating liquors. Nelson was sentenced to nine years in the State penitentiary.
The facts tended to show that on October 3, 1987, the appellant was traveling west in the eastbound lane of Interstate 10 in Baldwin County, Alabama, near the Florida state line. Dolly Lynn was traveling east in the eastbound lane of the same interstate. At some point, the automobiles operated by the appellant and the deceased *Page 1153 
collided with one another in a head-on collision.
Trooper Stewart arrived on the scene and observed that the appellant had a very strong odor of alcoholic beverage on his breath and person. Also, his speech was very slurred. Trooper Paustian, who assisted Trooper Stewart in the investigation of the accident, observed no alcoholic beverages within the appellant's vehicle at the scene of the wreck.
Nelson was taken to South Baldwin Hospital in Foley, Alabama. Meanwhile, State Trooper Pratt, who was not involved in the investigation of the accident, received a radio dispatch. He was directed by his supervisor to go to the hospital and place the appellant under arrest for driving under the influence, a misdemeanor. After being advised of his Miranda rights and the Alabama Implied Consent Law, Nelson was placed under arrest.
In the presence of three witnesses, the appellant consented to having his blood drawn, by placing an "X" on the consent form. Blood was then drawn at the direction of Huey Mack, the county coroner for Baldwin County, Alabama. Testimony established that although Nelson was "highly intoxicated," he fully and completely understood the consequences and ramifications connected with executing the consent form for the purpose of drawing blood.
Ann Harrison, a medical technologist at South Baldwin Hospital, conducted a blood alcohol test of the appellant's blood sample. Such a test is a standard procedure and on this particular occasion, every step of the protocol was performed to specification. The test results revealed that Nelson had a blood alcohol content of 0.314 percent on the morning of the accident.
An autopsy was performed on Dolly Lynn by Leroy Riddick, M.D., an employee of the Alabama Department of Forensic Sciences. The autopsy revealed that the deceased had died from multiple blunt force injuries to the head, chest, abdomen, and extremities. Such injuries are consistent with injuries sustained by those involved in head-on motor vehicle collisions.
The appellant contends that the trial court committed harmful and reversible error by admitting into evidence, over defense counsel's objection, the accused's blood alcohol test results with respect to the blood samples taken on October 3, 1987. More specifically, the appellant asserts that the blood alcohol test was not obtained according to statutory requirements and that the results of the blood test should not have been admitted into evidence. In the alternative, the appellant argues that the blood alcohol content test results were "fruit of the poisonous tree" and should have been excluded.
 I
Alabama Code (1975), § 32-5A-194, authorizes the introduction of blood alcohol test results into evidence. Subsection (a)(1) of this statutory provision states:
 "Chemical analyses of the person's blood, urine, breath or other bodily substance to be considered valid under the provisions of this section shall have been performed according to methods approved by the department of forensic sciences and by an individual possessing a valid permit issued by the department of forensic sciences for this purpose. The court trying the case may take judicial notice of the methods approved by the department of forensic sciences. The department of forensic sciences is authorized to approve satisfactory techniques or methods, to ascertain the qualifications and competence of individuals to conduct such analyses, and to issue permits which shall be subject to termination or revocation at the discretion of the department of forensic sciences. The department of forensic sciences shall not approve the permit required in this section for making tests for any law enforcement officer other than a member of the state highway patrol, a sheriff or his deputies, a city policeman or laboratory personnel employed by the department of forensic sciences." (Emphasis added.)
It is the appellant's contention that, under the statute, the test results are inadmissible *Page 1154 
because the coroner ordered the blood test and he is not a law enforcement officer. Further, the appellant argues that the State failed to lay the requisite foundation to show that the method of testing used was an approved, satisfactory technique as mandated by the statute.
According to the principles set out in Whetstone v. State,407 So.2d 854, 857 (Ala.Cr.App. 1981), it was not necessary for the State to resort to a chemical test in order to make out a prima facie case against this appellant. However, since the State chose to have the results of Nelson's blood alcohol test admitted into evidence, the State either had to show that the test was taken in conformity with the statute at issue, or lay the requisite foundation for the admission of the test under general evidence principles. Admission of a blood alcohol test for which neither of these procedures is followed would result in reversible error. Id. 407 So.2d 854.
It is apparent from the following colloquy that the test results were admitted under general evidence principles and, further, that defense counsel was aware of this, even though he makes a different argument on appeal:
 "Q And what were the results of the blood alcohol test which you performed on the blood of Robert Boyd Nelson?
 "MR. BOLTON: Excuse me, just a minute. Your Honor, we object. If she is attempting to get in a chemical analysis through the non-statutory method, then you have to show first what the proper methods are, that they were followed, that those are approved methods, and that they are scientifically accepted just like any other scientific tests."
In Kent v. Singleton, 457 So.2d 356, 359 (Ala. 1984), the Alabama Supreme Court held that before scientific test results can be received into evidence, the circumstances surrounding the taking and testing of the sample, including its identification and maintenance, must be shown to be acceptable and reasonable and capable of yielding accurate and reliable results. It is not necessary for this court to go into every detail of the circumstances surrounding the tests in the case at bar. However, we are of the opinion that blood drawn and tested in duplicate by licensed medical technologists in a licensed hospital is scientifically acceptable and reasonable and any results from said tests are accurate and reliable. Thus, the appellant's blood alcohol content test results were correctly received into evidence.
 II
The appellant next contends that the blood alcohol content test results were "fruit of the poisonous tree" and should have been suppressed. He premises this argument on the fact that he was arrested for a misdemeanor without the arresting officer having either witnessed the offense or secured an arrest warrant. The arresting officer effected said arrest after having received instructions over his radio from his superior to do so.
This court held, in Parker v. State, 397 So.2d 199, 201
(Ala.Cr.App.), cert. denied, 397 So.2d 203 (Ala. 1981), that a superior officer's knowledge may be imputed to an individual arresting officer in determining whether probable cause existed for the arrest. See also Robinson v. State, 361 So.2d 379
(Ala.Cr.App.), cert. denied, 361 So.2d 383 (Ala. 1978). In the instant case, Officer Pratt was directed by his superior, who had investigated the scene of the accident, to arrest the appellant. Consequently, we see no illegality in the arrest, and the test results were correctly received into evidence.
Based on the foregoing, the judgment of the trial court is due to be, and it is hereby, affirmed.
AFFIRMED.
All the Judges concur except BOWEN, J., concurs in result only. *Page 1155