The appellant, Cecil James Wagner, was convicted of the capital murder of Charlie Smith, in violation of § 13A-5-40, Code of Alabama 1975. He was sentenced to life imprisonment in the State penitentiary without the possibility of parole.
The evidence tended to show that on September 27, 1986, the appellant did some drinking. Evidently in hopes of arguing diminished capacity in mitigation, he testified that he had consumed a great deal of alcohol.
At approximately midnight, as the appellant was walking home, he passed Mrs. Irene Eutsey's home. The appellant was familiar with the home because his mother had often cooked for the elderly Mrs. Eutsey. The appellant was also aware that Mrs. Eutsey shared her home with an elderly man named Mr. Charlie Smith.
Mr. Smith was in the habit of carrying many one-dollar bills in his billfold. The appellant knew of this habit. He decided to enter Mrs. Eutsey's house to steal Mr. Smith's money.
The appellant entered the house by using a ladder to climb through a second-story window. Once in the home, he walked into Mrs. Eutsey's bedroom, where he found her sleeping. Next, he went into the den and found Mr. Smith asleep on the couch. The appellant proceeded into the kitchen, found a butcher knife, and went back into the den. As the appellant reached into Mr. Smith's rear pocket, Mr. Smith awoke. At this point, the appellant plunged the butcher knife into Mr. Smith's chest, killing him almost immediately. The appellant then fled with the victim's wallet, which contained 20 one-dollar bills.
On the following day, September 28, 1986, Officer J.C. Clark of the Montgomery Police Department was patrolling the Day Street and Bell Street area and received a "BOLO" (be-on-the-lookout bulletin) for the appellant in connection with the Smith murder. There was also an unserved warrant for the appellant's arrest for a parole violation. Shortly after receiving the BOLO, he saw the appellant walking down Day Street. Officer Clark arrested the appellant and advised him of his Miranda rights.
The appellant was transported to police headquarters, where he was met by Investigator Hornsby and Corporal Davis. They were in possession of the parole violation warrant. The appellant was advised of his Miranda rights again. He then admitted to breaking into Mrs. Eutsey's house and robbing and killing Mr. Smith. He subsequently gave the same statement on videotape. The appellant raises four issues on appeal.
 I
The appellant first contends that his arrest was illegal and that his incriminating statements given after his arrest were unlawfully received into evidence against him at trial. The appellant argues that one may not be arrested for a felony offense unless the officer either has a warrant or has probable cause to believe that the defendant has committed a felony. The appellant argues that Officer Clark had no probable cause and did not have a warrant when he effected the appellant's arrest.
Section 15-22-31, Code of Alabama 1975, is the controlling statute in this situation. Subsection (b) of this statute states:
 "Any parole officer, police officer, sheriff or other officer with power of arrest, upon the request of the parole officer, may arrest a parolee without a warrant; but, in case of an arrest without a warrant, the arresting officer shall have a written statement by said parole officer setting forth that the parolee has, in his judgment, violated the conditions of parole, in which case such statement shall be sufficient warrant for the detention of said parolee in the county jail or other appropriate place of detention until the warrant issued by the board of corrections has been received at the place of his detention; provided, however, that in no case shall a parolee be held longer than 10 days on the order of the parole officer awaiting the arrival of the warrant as provided in this section." *Page 1143 
However, this statute has been interpreted so as not to require the arresting officer to have in his possession a warrant at the time of the arrest. In United States v. Gunn,428 F.2d 1057 (5th Cir. 1970), City of Montgomery detectives telephoned an Alabama parole officer and advised him of incriminating circumstances with regard to the defendant. The detectives thereafter arrested the defendant at the parole officer's request. The court held that the detectives were in substantial compliance with Alabama's statute providing for arrest of parolees, even though the arrest was made before obtaining a written statement from the parole officer. See also N. Cohen J. Gobert, The Law of Probation and Parole § 11.07 (1983), which states:
 "When a probation or parole violator warrant is issued, several technical questions are presented with regard to the procedures which must be followed in effecting the arrest. One issue is whether the person making the arrest must actually be in physical possession of the violator warrant at the time the arrest is made. A related question is whether the alleged violator must actually be served with a copy of the warrant at the time of the arrest. While there are few authorities directly on point, it would seem that the answer to both questions is no. In general, arrests pursuant to warrants in ordinary criminal cases do not require the arresting officers either to physically possess a warrant or to serve a copy of the warrant at the time of the arrest. A fortiori, it is doubtful that either would be required in parole and probation violator cases where procedures are less formal."
Thus, the fact that a warrant had been issued was sufficient to allow Officer Clark to arrest the appellant, even though Officer Clark was not in possession of the warrant when he made the arrest.
 II
The appellant next contends that the prosecution exercised racial discrimination in jury selection by using six of fourteen peremptory challenges to strike black venirepersons. This, he argues, was a violation of the rule of Batson v.Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), because he argues that the prosecution could not offer a race-neutral explanation for the allegedly discriminatory challenges.
The reasons given by the prosecutor for his strikes were as follows:
 1. Simon McNabb: The District Attorney's office had prosecuted Mr. McNabb in some child abuse cases.
 2. Rosie Walters: Ms. Walters did not appear to be a juror that would be favorable to the State. She focused her attention on the defense during much of the juror qualification. She did not give strong supportive answers, indicating that she might not be favorable to the death penalty during the sentencing phase of the trial.
 3. Patricia Jackson: Ms. Jackson appeared to be a juror that would be sympathetic to the appellant in a death penalty case.
 4. Roosevelt Davis: Mr. Davis was young and close to the same age as the appellant. He appeared to be the type of juror who would be sympathetic to the appellant in a death penalty case.
 5. George Traver: Mr. Traver was young and had theft and petty larceny charges against him.
 6. George Dupree: Mr. Dupree looked and acted hostile to the State. He did not appear to have the strength and character the State would want from a juror during the sentencing phase of a death penalty case. He did not give strong answers to questions during voir dire.
Mr. Traver and Mr. McNabb were struck because they had been prosecuted by the district attorney's office. This is a race-neutral reason. Ward v. State, 539 So.2d 407 (Ala.Cr.App. 1988). The remaining four strikes of blacks were because they were either about the same age as the appellant or appeared to be sympathetic to him or hostile to the State or both. These *Page 1144 
reasons given by the prosecutor for using his strikes to eliminate these four people were also race-neutral. Scales v.State, 539 So.2d 539 So.2d 1074 (Ala. 1988).
Furthermore, the trial court heard the explanations given by the prosecutor and found them to be sufficient.
 "We appreciate that it is impossible to know what is in the mind of another person, and that it is possible that, in stating his reasons for striking a black member of the venire, a prosecutor may give a reason that is not the true reason, but we are convinced that the trial judges in our system are in a much better position than appellate judges to decide whether the truth has been stated."
Scales, supra, 539 So.2d at 1075. Therefore, we find no error in the jury selection of this case.
 III
At trial, a witness for the State, Charles Miller, who was the evidence technician in this case, testified that he took a videotaped statement from the appellant. A written transcription of that videotaped statement was admitted into evidence, after Officer Miller testified that the written transcript was an accurate reproduction of the appellant's statement in the videotape. Later, when the videotaped statement was played for the jury, the State offered into evidence 14 photocopies of the transcribed statement because the videotape was "a little hard to hear" and would be easier to understand if the jurors could read the transcript while viewing the videotape.
The appellant argues that the receipt of these copies was error because, he says, no predicate had been laid. He contends that the State failed to prove that the transcript copies truly and correctly reported what was on the videotape. However, the record reflects the following:
BY MR. BUTLER (continuing)
 "Q. Let me show you what's been marked collectively as State's Exhibit Number Eleven here and State's Exhibit Number Six here. Is this Number Eleven a true and correct copy of State's Exhibit Number Six, which is the statement given by Cecil Wagner?
"A. Yes, sir.
 "Q. All right, sir. How many pages is State's Exhibit Number Six?
"A. Seven.
 "Q. Would you look at State's Exhibit Number Eleven and make sure that they are the same pages, that each page is a true and correct copy of State's Exhibit Number Six?
"A. There are seven pages in that one.
"Q. All right. Is it the same statement?
"A. Yes, sir."
In Self v. State, 512 So.2d 811 (Ala.Cr.App. 1987), this court held that "a typewritten transcript of a recorded conversation is admissible where the officer who listened to the conversation at the time of the recording testifies that the transcript accurately reflected the conversation." Hawkins v.State, 443 So.2d 1312, 1314-15 (Ala.Cr.App. 1983). See alsoWatkins v. State, 495 So.2d 92, 98 (Ala.Cr.App. 1986). As Officer Miller had already testified that the original transcript was a true and accurate version of the videotaped confession, it was not necessary to reestablish this fact when the photocopies were offered into evidence. All that was necessary was for Officer Miller to testify that the copies were true and accurate reproductions of the original transcript, which he did. Thus, the copies were correctly received into evidence.
 IV
Finally, the appellant contends that the trial court committed reversible error by denying his requested instruction on criminally negligent homicide as a lesser included offense of capital murder. He also argues that the trial court committed reversible error by failing to charge the jury on premeditation and deliberation as elements of murder.
The correct method of objecting to the trial court's refusal to give requested written charges is set forth in Temp. Rule 14, A.R.Crim.P., as follows: *Page 1145 
 ". . . No party may assign as error the court's giving or failing to give a written instruction, or the giving of an erroneous, misleading, incomplete, or otherwise improper oral charge, unless he objects thereto before the jury retires to consider its verdict."
The appellant failed to preserve this issue for review, since he never objected to the trial court's oral charge. See Cox v.State, 500 So.2d 1296 (Ala.Cr.App. 1986); Holmes v. State,497 So.2d 1149 (Ala.Cr.App. 1986). Thus, nothing is preserved for our review. Even if he had preserved the issue, he would not have prevailed here. The evidence would not support the giving of a criminally negligent homicide charge.
Based on the foregoing, the judgment of the trial court is due to be, and it is hereby, affirmed.
AFFIRMED.
All the Judges concur.