[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 147 
In separate indictments, William Eric Davis was charged with the murder of four persons in a head-on collision, in violation of § 13A-6-2, Code of Alabama 1975. The cases were consolidated for trial; the jury found Davis guilty on all 4 counts as charged in the indictments; and he was sentenced to 4 consecutive 30-year terms of imprisonment. Five issues are raised on appeal.
 I
Davis contends that the trial court erred by allowing the State to strike 6 of the 11 potential black jurors over his objection based on Batson v. Kentucky, 476 U.S. 79,106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Davis argues that he was denied equal protection due to the alleged purposefully discriminatory use of peremptory challenges by the State.
On a review of the record we find that three of the six potential black jurors who were struck were struck because either they or a member of their family had been arrested for driving under the influence (D.U.I.). The State also struck ten potential white jurors because either they or a member of their family had been arrested for D.U.I.
 "Such action in which non-black jurors have been challenged for the same or similar characteristics as black jurors who are struck has been deemed to be indicative of neutrality and is evidence *Page 148 
which tends to overcome the presumption of discrimination. Ex parte Branch, 526 So.2d 609
(Ala. 1987)."
Ward v. State, 539 So.2d 407, 408 (Ala.Cr.App. 1988), cert.denied, 539 So.2d 407 (Ala. 1989).
The fourth potential black juror struck by the State was struck because of a criminal record. We have held that strikes based on criminal records are not racially discriminatory in nature; this reason is deemed to be "race-neutral." Bryant v.State, 516 So.2d 938 (Ala.Cr.App. 1987).
The fifth potential black juror struck by the State was struck because her son had been prosecuted by the State for rape. The sixth potential black juror struck by the State was struck because his cousin was presently being prosecuted by the State. The reason given for striking these potential jurors was based on considerations other than race. The State, moreover, also struck two potential white jurors whose relatives had been prosecuted by the State. Hence, because the reasons given for striking all six potential black jurors were based on considerations other than race, the trial court properly overruled Davis's Batson objection.
 II
Davis contends that the evidence, which was sufficient to sustain manslaughter convictions, was insufficient to sustain his murder convictions and that the trial court erred in denying his motions for directed verdict and for judgment of acquittal.
"In determining the sufficiency of the evidence to sustain the conviction, this court must accept as true the evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider the evidence in the light most favorable to the prosecution." Faircloth v. State,471 So.2d 485, 489 (Ala.Cr.App. 1984), aff'd, 471 So.2d 493 (Ala. 1985). Where, moreover, the State establishes a prima facie case, conflicting evidence presents a jury question, which is not subject to review on appeal. Willis v. State,447 So.2d 199, 201 (Ala.Cr.App. 1983).
Section 13A-6-2, Code of Alabama 1975, states in pertinent part:
"(a) A person commits the crime of murder if:
 "(1) With intent to cause the death of another person, he causes the death of that person or of another person; or
 "(2) Under circumstances manifesting extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to a person other than himself, and thereby causes the death of another person. . . ."
A conviction for murder resulting from a homicide caused by the driving of an automobile is authorized where there is sufficient evidence to warrant a finding by the jury either that the accused intentionally caused the collision or that he was conscious of his acts, the impending dangers surrounding him, and the probable results of the acts, and, with reckless indifference to the probable consequences of his acts, brought about the collision and the death of the deceased. Smith v.State, 460 So.2d 343 (Ala.Cr.App. 1984).
In Smith, evidence that the accused, who had an blood alcohol level of .25 percent, collided head-on with an automobile on a Talladega County highway was more than sufficient to enable the jury to find the accused guilty of murder beyond a reasonable doubt.
In the case sub judice, the evidence reveals that Davis ingested large quantities of alcohol, which resulted in his blood alcohol level being at least .179 percent (Davis's blood alcohol level measured .237 percent immediately after the accident in the emergency room) and that he then drove through dense fog at speeds of between 75 and 88 miles per hour and that he hit the victims' vehicle head-on in their lane of traffic. The evidence further showed that Davis had several D.U.I. arrests and convictions and that he knew the dangers of driving on the highway while intoxicated. This evidence was more than sufficient for the jury to find Davis guilty of murder beyond a reasonable doubt, and the trial court properly denied Davis's motions for *Page 149 
directed verdict and for judgment of acquittal.
 III
Davis contends that the trial court committed reversible error in allowing rebuttal testimony of Davis's prior D.U.I. record. Davis argued at trial that such testimony was not proper rebuttal but now argues for the first time on appeal that that evidence of prior bad acts was inadmissible.
The order of proof and rebuttal testimony rests largely in the sound discretion of the trial court. Webb v. State,455 So.2d 223 (Ala.Cr.App. 1984).
The prior driving history, as far as the intoxication of the defendant, is admissible to show the defendant's intent and reckless disregard. Holifield v. State, 520 So.2d 240
(Ala.Cr.App. 1987) (five-year-old conviction not too remote to show intent). In Smoot v. State, 520 So.2d 182 (Ala.Cr.App. 1987), we held that evidence of prior incidents of a manslaughter defendant's driving under the influence was relevant and admissible in a prosecution for recklessly causing the victim's death. Hence, in the instant case, the trial court properly admitted Davis's record of driving under the influence as rebuttal testimony to show Davis's intent or reckless disregard.
 IV
Davis contends that the trial court erred in denying his motion to suppress the results of all blood analyses performed on Davis and on Eileen Gibson, a passenger in Davis's car, on February 11, 1990, the date of the head-on collision.
With respect to the blood analysis performed on Davis after his arrest pursuant to the implied consent statute, §32-5-192(a), Code of Alabama 1975, Davis argues that there was no evidence to show that he consented to the withdrawal of his blood and that because he was arrested at the hospital and not at the scene of the accident, he could not have been arrested in accordance with § 32-5-171, Code of Alabama 1975.
Review on appeal is limited to issues properly and timely presented to the trial court on which rulings were invoked.Dixon v. State, 476 So.2d 1236 (Ala.Cr.App. 1985). Because Davis can point to no place in the record where he raised the specific objection that his arrest at the hospital was beyond the scope of § 32-5-171, there is nothing presented to this court to review.
Our review of the record, moreover, reveals absolutely no evidence that Davis, who by statute impliedly consented to the blood test, refused to accommodate Trooper Morris's request that he submit to a blood analysis immediately following his arrest at the hospital. Hence, because the State clearly complied with the procedure prescribed by § 32-5A-194, Code of Alabama 1975, the results of Davis's post-arrest blood analysis compiled by the department of forensics, which showed a blood-alcohol level of .179 percent were admissible in Davis' trial.
With respect to the blood analysis performed on Davis and Gibson at the hospital prior to Davis's arrest, Davis contends that the blood samples were not maintained and that the State did not prove that the method of testing the blood conformed to accepted standards.
There is no requirement that § 32-5A-194, Code of Alabama 1975, be the exclusive means for admitting intoxication test results. Whetstone v. State, 407 So.2d 854, 856 (Ala.Cr.App. 1981) (construing predecessor § 32-5-193). The results of blood seized only for medical purposes and not in furtherance of a criminal or accident investigation are generally admissible where the State shows that the "circumstances of the taking of the sample, the identification, maintenance, and transporting of it, and the testing itself are scientifically acceptable and reasonably expected to produce results which are accurate and reliable." Aycock v. Martinez, 432 So.2d 1274, 1277 (Ala. 1983).
A careful review of the record reveals that the State laid the proper foundation for the admission of the results of the pre-arrest blood analyses of Davis and Gibson *Page 150 
pursuant to the standards articulated in Nelson v. State,551 So.2d 1152 (Ala.Cr.App. 1989) and Powell v. State,515 So.2d 140 (Ala.Cr.App. 1986).
It is not necessary for this court to go into every detail of the circumstances surrounding the pre-arrest tests in the instant case. We are, however, of the opinion that tests performed by licensed medical technologists on blood drawn in a licensed hospital are scientifically acceptable and reasonable, and any results from those tests are accurate and reliable.
The results, which showed that Davis and Gibson had blood-alcohol of .237 percent and .191 percent, respectively, were properly admitted into evidence, despite the absence of the blood samples at trial because the State established a continuous chain of custody from the time the pre-arrest blood samples were taken from Davis and Gibson until the time the results were obtained, only 20 minutes thereafter. See Aycockv. Martinez, supra, 432 So.2d at 1278.
 V
Davis contends that his sentence of 30 years' imprisonment on each count is cruel and unusual punishment and is prohibited by the Eighth Amendment of the United States Constitution.
Murder is a class A felony carrying a penalty of not less than 10 years nor more than 99 years or life imprisonment. Section 13A-5-6(a)(1), Code of Alabama 1975. When a sentence given by the court is within the minimum and maximum range provided by statute, we will not overturn the sentence absent a clear abuse of discretion by the trial court. Fordham v.State, 513 So.2d 31 (Ala.Cr.App. 1986). Because we find no clear abuse of discretion in this case, the sentences imposed by the trial court will not be overturned.
The foregoing opinion was prepared by the Honorable JAMES H. FAULKNER, a Retired Alabama Supreme Court Justice, and his opinion is hereby adopted as that of the court.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.