Richmond Thomas, Jr., was indicted on April 12, 1989, on March 2, 1990, and on October 11, 1990, for the murder of Jeffrey Leon Brown, in violation of § 13A-6-2, Code of Alabama 1975. The April 12, 1989, and March 2, 1990, indictments were quashed, and the October 11, 1990, indictment was substituted. The jury found Thomas guilty of murder as charged in the indictment, and he was sentenced to life imprisonment. Four issues are raised on appeal.
 I
Thomas contends that the trial court erred in denying his motion under Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712,90 L.Ed.2d 69 (1986), because the prosecution used six of its nine peremptory strikes to remove blacks from the jury venire.
In Batson, the Supreme Court held that "the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." 476 U.S. at 89,106 S.Ct. at 1719. "Once the defendant makes a prima facie showing, the burden shifts to the State to come forward with a neutral explanation for *Page 418 
challenging black jurors." Id. at 97, 106 S.Ct. at 1723.
On a review of the record we find that five of the six potential black jurors who were struck were struck because those veniremembers or a relative of theirs had been either charged with, prosecuted for, or convicted of a crime. We have held that strikes based on previous criminal charges, prosecutions, or convictions of the veniremember or a family member of the veniremember are not racially discriminatory as such. Jackson v. State, 549 So.2d 616 (Ala.Cr.App. 1989) (veniremember's prior conviction for second degree murder held to be race-neutral reason); Powell v. State, 548 So.2d 590
(Ala.Cr.App. 1988); aff'd, 548 So.2d 605 (Ala. 1989) (court held following to be race-neutral reasons: one veniremember's uncle had been falsely prosecuted; another veniremember's nephew was a defendant in a burglary case; another veniremember had a family member who had been charged with a crime; a veniremember had been charged with DUI; a veniremember had been prosecuted for various offenses). Hence, the reason for striking these five veniremembers is "race neutral."
The sixth potential black juror was struck because she knew the defense attorney; because she displayed an angry, antagonistic attitude toward the prosecutor; and because she had previous information about the murder. The State also struck two white potential jurors because of their connection or relationship with defense counsel. "Such action in which non-black jurors have been challenged for the same or similar characteristics as black jurors who are struck has been deemed to be indicative of neutrality and is evidence which tends to overcome the presumption of discrimination." Ward v. State,539 So.2d 407, 408 (Ala.Cr.App. 1988). In addition, we have held that strikes based on the veniremember's hostile attitude toward the prosecution or the veniremember's connection to defense counsel are "race neutral." Wagner v. State,555 So.2d 1141 (Ala.Cr.App. 1989) (veniremember's looking and acting hostile towards the State held to be race-neutral reason);Williams v. State, 548 So.2d 501 (Ala.Cr.App. 1988), cert.denied, 489 U.S. 1028, 109 S.Ct. 1159, 103 L.Ed.2d 218 (1989) (veniremember's being married to defense attorney held to be race-neutral reason).
Hence, because the prosecution's reasons for striking six black veniremembers were based on considerations other than race, the trial court properly denied Thomas's Batson motion.
 II
Thomas contends that the trial court erred by allowing the prosecutor to use criminal histories of veniremembers in justifying striking blacks from the panel where the prosecutor did not produce documentation of those histories to ascertain whether white veniremembers with similar or worse criminal histories were allowed to remain on the jury panel.
After making a Batson motion, defense counsel made the following statement:
 "MR. CHESHIRE: Judge, at this time I would in response to what the prosecutor said earlier, that there has historically been a pattern of discrimination in the State of Alabama and in Dallas County, which is well documented. Further, defense counsel is under no burden as to who — the race of whom it strikes. Your Honor, I would also assert that if the State has made the comment that a number of these people were struck due to their possible prior record, and if the State has some type of documentation to show an objective standard that other people who were not struck who were white had similar records or worse records, I think that documentation should be made a part of this court record before a decision is made as to this motion.
"MR. GREENE: I don't have any problem —
"THE COURT: Okay; the motion is denied."
It is clear from the record that the trial court denied Thomas's Batson motion. The record, however, does not contain a ruling adverse to Thomas on his request for documentation from the prosecutor. *Page 419 
The prosecutor, moreover, did not object to Thomas's request for the documentation. This issue is therefore not preserved for appeal because Thomas failed to obtain an adverse ruling below. Walker v. State, 416 So.2d 1083 (Ala.Cr.App. 1982).
Had this issue been properly preserved for appeal, we note that a defendant does not have the right to cross-examine members of the venire or any individual who supplied the prosecutor with information concerning any members of the venire. Smith v. State, 590 So.2d 388 (Ala.Cr.App. 1991);Jackson v. State, 593 So.2d 167 (Ala.Cr.App. 1991). These cases also hold that a prosecutor may even strike from mistake, as long as the assumptions involved are based on an honest belief and are racially neutral.
Hence, even had this issue been properly preserved for appeal, Thomas would not have the right to examine the prosecutor's documentation on the veniremembers.
 III
Thomas contends that the trial judge should have recused himself before sentencing because after the guilt phase of the trial Thomas filed a grievance with the Judicial Inquiry Commission against the trial judge. In particular, Thomas argues that the trial judge, the Honorable J.C. Norton, ignored "some comments and stuff made by the District Attorney in the trial that were objected to" and that the judge called Thomas a "cold blooded murderer."
A judge is not disqualified from sitting in a proceeding where one of the parties has filed a complaint against the judge with the Judicial Inquiry Commission. Ham v. State,540 So.2d 805 (Ala.Cr.App. 1988). A judge should recuse himself "if he has any interest, the probable and natural tendency of which is to create a bias in the mind of the judge for or against a party to the suit." Morgan County Commission v. Powell,292 Ala. 300, 311, 293 So.2d 830, 839 (1974). A mere accusation of bias, unsupported by fact, does not require disqualification of a judge. Ross v. Luton, 456 So.2d 249, 254 (Ala. 1984). Prejudice on the part of the judge is not presumed, and the burden is on the moving party to prove that the judge is biased. Reach v. Reach, 378 So.2d 1115 (Ala.Civ.App. 1979),cert. denied, 378 So.2d 1118 (Ala. 1980). "Adverse rulings during the course of the proceedings are not by themselves sufficient to establish bias and prejudice." Hartman v. Boardof Trustees of the University of Alabama, 436 So.2d 837, 841
(Ala. 1983).
The record reveals that the trial court stated that the jury found Thomas guilty of the "cold blooded intentional murder of his own kinsman." Unless Thomas can show that Judge Norton exhibited a personal bias in making the statement, disqualification is not mandated. Moreland v. State,469 So.2d 1305 (Ala.Cr.App. 1985). The comment of the trial court here was clearly a judicial statement of the verdict and not any reflection of personal bias. See Mayberry v. State, 51 Ala. App. 343, 285 So.2d 507 (1972), cert. denied, 291 Ala. 792,285 So.2d 512 (1973), cert. denied, 415 U.S. 929, 94 S.Ct. 1438,39 L.Ed.2d 486 (1974). Hence, because his comment was not a reflection of personal bias, the adverse rulings that Thomas received during the course of the trial were likewise insufficient to establish bias or prejudice. The trial court therefore correctly refused to recuse himself from sentencing Thomas.
 IV
Thomas contends that the evidence presented by the State was insufficient to support the jury's verdict of guilty of murder.
Section 13A-6-2, Code of Alabama 1975, provides in pertinent part:
"(a) A person commits the crime of murder if:
 "(1) With intent to cause the death of another person, he causes the death of that person or of another person; or
 "(2) Under circumstances manifesting extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to a person other than himself, and thereby causes the death of another person."
In deciding whether there is sufficient evidence to support the verdict of the jury *Page 420 
and the judgment of the trial court, this court must ascertain whether there existed legal evidence before the jury from which the jury by fair inference could find the defendant guilty.Saffold v. State, 494 So.2d 164 (Ala.Cr.App. 1986).
The State produced five eyewitnesses to the shooting death of Jeffrey Leon Brown. Each witness testified that Thomas had indicated that he wanted to "shut the victim's mouth," that Thomas took the time to load his rifle, that Thomas deliberately walked over to the victim carrying the loaded rifle, that Thomas deliberately pointed the loaded rifle at the victim, that the victim did nothing to provoke Thomas at this time, and that Thomas then pulled the trigger of the loaded rifle and shot the victim one time. According to an autopsy, this gunshot wound caused the victim's death. Even Thomas's own eyewitness testified that there was no struggle over the gun.
The testimony of these eyewitnesses was clearly sufficient to sustain Thomas's conviction of murder.
The foregoing opinion was prepared by the Honorable JAMES H. FAULKNER, a former Alabama Supreme Court Justice, and his opinion is hereby adopted as that of the court.
The judgment of the circuit court is affirmed.
AFFIRMED.
All the Judges concur.