TAYLOR, Presiding Judge.
The appellant, Harry Jones, Jr., appeals his conviction for driving under the influence of alcohol, a violation of § 32-5A-191(a)(2), Code of Alabama 1975. He was fined $500 and was ordered to undergo a substance abuse evaluation. This appeal stems directly from the appellant’s bench trial in the municipal court for Summerdale, as provided by Rule 30.2(1), Ala.R.Crim.P. Rule ■ 30.2(1) states:
“An appeal from the district or municipal court shall go directly to the appropriate appellate court:
“(1) If an adequate record or stipulation of fact is available and the right to *1290 jury trial is waived by all parties entitled to trial by jury, or
“(2) If the parties stipulate that only questions of law are involved and the district court or the municipal court certifies the question.”
In this case there is an adequate record of the municipal court proceedings and the appellant waived his right to a jury trial.
The state’s evidence tended to show that in April 1995 the appellant was involved in an automobile collision. Ernest Bishop, the driver of the other vehicle involved in the collision, testified that he was travelling east on highway 32, approaching an intersection with highway 55 and that he had the right-of-way. Bishop testified that the appellant stopped at a stop sign at the intersection. Bishop stated that the appellant then drove his vehicle into the intersection in front of Bishop’s vehicle. Bishop further testified that he did not talk to the appellant or hear the appellant talk. The evidence indicated that the appellant had a prosthetic leg, and was himself injured in the collision. Bishop, however, was nevertheless permitted to testify to his opinion as to the appellant’s intoxication. He said that in his opinion the appellant was under the influence of alcohol at the time of the collision. The only other witness to testify in district court was Ed Casseb-aum. Cassebaum testified that the ear driven by Bishop belonged to him and that the insurance company considered the car a total loss. The trial court also received into evidence a medical report of the appellant’s blood-alcohol content from Thomas Hospital in Fairhope, Alabama. The report showed that the appellant’s blood alcohol content at the time of the accident was .267%. The arresting officer did not testify.
The appellant contends that the trial court erred by receiving into evidence the report showing his blood alcohol content prepared at Thomas Hospital. The following occurred after both prosecution witnesses had testified:
“MR. THEIS [prosecutor]: That’s all.
“MR. PIGOTT [defense counsel]: Nothing further.
“MR. THEIS: Judge, we offer to, we’d offer the, ah, certified blood alcohol test that was ... from Thomas Hospital.
“MR. PIGOTT: Judge, we, object to that judge, there’s no foundation and there’s no one here from the hospital that can properly authenticate that and how that was drawn, whether or not an alcohol swab was used.
“THE COURT: I’ll take that under advisement. Go ahead. City rests?
“MR. THEIS: Yes.
“MR. PIGOTT: Judge, we move for a judgment of acquittal ...
“THE COURT: Denied. Anything else?
“MR. PIGOTT: We rest.
“THE COURT: O.K. Mr. Jones, based upon the evidence before me, I’m going to find you guilty of the offense of driving under the influence. Do you have anything to say before I pass sentence?”
The trial court denied the appellant’s objection to the admission of the medical report, and then found the appellant guilty. . The appellant again voiced his objections to the blood test in a motion for a new trial. The motion stated:
“The defendant objects to the admissibility [of the results of the blood alcohol test] on the grounds that no testimony or evidence was presented to properly authenticate the records, nor was there any testimony or evidence that the tests were performed in accordance with methods approved by the Department of Forensic Sciences, nor was there any testimony or evidence that the blood was drawn by a qualified person. There was no foundation or predicate laid for the admissibility of the records.”
There is no question that the issue is preserved for appellate review.
Generally, the results of blood tests administered to determine blood alcohol content may be received into evidence. The state must lay a sufficient predicate in support of such evidence to indicate its reliability. A paper indicating the results of a blood alcohol test, without any supporting testimony, invites reversible error.
“Tests conducted to determine the alcohol or controlled substance content in a *1291 blood, urine, breath or bodily substance sample have been recognized as having attained sufficient scientific acceptance to satisfy the above mentioned Frye [v. United States, 293 F. 1013 (D.C.Cir.1923) ] test. Such tests, consequently, are admissible on the whole.
“Despite their overall acceptance in the courts, however, a foundation must be laid to show that the particular test in question was conducted by an appropriate person and in a reliable way. This foundation may be established in two ways. First, it may be proffered under general evidentia-ry principles governing the authentication of all scientific test results. These general principles are summarized in the following judicial language:
“ “While we find no Alabama cases which specifically outline all requisite elements of a predicate for the admission of scientific test results, it is generally held that such a predicate must show that the circumstances of the taking of the sample, the identification, maintenance, and transporting of it, and the testing itself are scientifically acceptable and reasonably expected to produce results which are accurate and rehable.’
“Alternatively, however, the foundation may be laid by showing that the specimen was taken and tested in compliance with the prescribed statutory procedure. The Alabama Supreme Court has interpreted the statute governing blood, urine, breath and body specimens, offered to show alcohol or controlled substance, as prescribing the following steps in laying the predicate for admissibility. First, the law enforcement agency of the officer who administers the PEI [photoelectric intoximeter, now Intoxilyzer 5000] test must have designated such test as their means of testing those believed to be under the influence. This information may be furnished by the officer who administered the test. Secondly, there must be a showing that the test was performed according to methods approved by the State Board of Health [now Department of Forensic Sciences, see § 32-5A-194(a)(l) ]. This may be proved by the introduction of rules and regulations the officer followed while administering the tests and the officer’s testimony that he did, in fact, follow those rules when he administered the test in question. Thirdly, there must be a showing that the person administering the test has a valid permit issued by the State Board of Health for this purpose.

“Whether one chooses to lay the proper predicate through general evidentiary principles or by compliance toith the foregoing statute, there must always be a showing of continuous chain of custody as to both the subject person and the sample taken from him."

C. Gamble, McElroy’s Alabama Evidence, § 490.01(2) (4th ed. 1991). (Footnotes omitted.) (Emphasis added.)
The state did not present any testimony at all regarding the blood test performed on the appellant. If the State elects to offer the results of blood alcohol test into evidence, the State must comply with the rules of evidence and the law that apply to everyone else in court. It must be shown that the test was taken in conformity with § 32-5A-194, Code of Alabama 1975, or the state must lay the requisite foundation for the receipt into evidence of the results of the test under general evidentiary principles. Nelson v. State, 551 So.2d 1152 (Ala.Cr.App.1989). “Admission of a blood alcohol test for which neither of these procedures is followed would result in reversible error.” Nelson, 551 So.2d at 1154. Further, this court has stated:
“The results of blood seized only for medical purposes and not in furtherance of a criminal or accident investigation are generally admissible where the State shows that the ‘circumstances of the taking of the sample, the identification, maintenance, and transporting of it, and the testing itself are scientifically acceptable and reasonably expected to produce results which are accurate and reliable.’ Aycock v. Martinez, 432 So.2d 1274, 1277 (Ala.1983).”
Davis v. State, 593 So.2d 145, 149 (Ala.Cr.App.1991).
In this case the state offered the blood test into evidence without any testimony indicating the reliability of the test, who performed the test, or the circumstances under which *1292 the test was performed. The trial court received the test without any foundation whatsoever having been established. The trial court erred to reversal when it incorrectly received the blood evidence into evidence.
In McDaniel v. State, 506 So.2d 360 (Ala.Cr.App.1986), this court stated:
“[E]ven had we found the foundation for the admittance of the test results to have been insufficient, the erroneous admission of the test results would not require a reversal in this case.
“It is clear from the record that the trial judge’s ruling was not based on the results of the blood test. He clearly indicated that the uncontroverted fact that the appellant had been drinking earlier in the day in combination with the uncontrovert-ed fact that the appellant was aware that he was tired and sleepy and continued to drive the automobile formed basis of his ruling. (R. 304.) The appellant was, therefore, not unduly prejudiced by the admission of the evidence. A.R.A.P. 45. See Gwin [v. State, 425 So.2d 500 (Ala.Cr.App.1982], supra.”
Section 32-5A-191(a)(2), Code of Alabama 1975, provides: “A person shall not drive or be in actual control of any vehicle while ... under the influence of alcohol_” The Alabama Supreme Court in Ex parte Buckner, 549 So.2d 451, 454 (Ala.1989), held that: “For the purposes of § 32-5A-191(a)(2), the phrase ‘under the influence of alcohol’ is to be defined as ‘having consumed such an amount of alcohol as to affect his ability to ■ operate a vehicle in a safe manner.’ ”
The only other evidence supporting the appellant’s conviction for driving under the influence was the testimony of Bishop, who was injured in the accident, that the appellant was under the influence of alcohol. Bishop did not talk to Jones and did not know him, nor did he testify as to Jones’s appearance and demeanor after the accident. It appears from the record that Bishop did not even notice that the appellant had a prosthetic leg, or to what degree Jones was himself injured in the collision. This evidence is insufficient to support the conviction. No matter whether Jones is guilty or not, any conviction must be supported by evidence that conforms to the law and the rules of evidence.
For the foregoing reasons the judgment must be, and it is hereby, reversed and the cause remanded to the Summerdale Municipal Court for proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
All the Judges concur.